**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DO NO HARM,
11357 Nuckols Rd., Pmb 115
Glen Allen, VA 23059

*Plaintiff,*

v.

PFIZER, INC.,
235 East 42nd Street
New York, New York 11017

*Defendant.*

Case No.1:22-cv-07908

## <u>VERIFIED COMPLAINT</u>

Do No Harm brings this verified complaint for declaratory relief, injunctive relief, and nominal damages against Pfizer, Inc. and alleges as follows:

## INTRODUCTION

1.      Racial discrimination is fundamentally "'immoral,'" "'inherently wrong,'" and "'destructive of democratic society.'" *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 521 (1989) (Scalia, J., concurring in judgment). "'[E]very time the government places citizens on racial registers and makes race relevant to the provision of burdens or benefits, it demeans us all.'" *Fisher v. Univ. of Tex. at Austin*, 570 U.S. 297, 316 (2013) (Thomas, J., concurring).

2.      Racial discrimination demeans us all the same even when it is done by private entities. Hence why Congress, in the Civil Rights of 1866 ("§1981"), extended the promise of equal protection and racial neutrality to contractual relationships. And why Congress passed Title VI of the Civil Rights Act of 1964, and Section 1557 of the Affordable Care Act: "'Simple justice requires that public funds, to which all taxpayers of all races contribute, not be spent in any fashion which encourages, entrenches, subsidizes, or results in racial discrimination.'" *Barbour v. Wash. Metro. Area Transit Auth.*, 374 F.3d

1161, 1170 (D.C. Cir. 2004). Both New York State and New York City laws also prohibit racial discrimination by private entities.

3.  Defendant Pfizer, Inc. is running a racially discriminatory fellowship—the Breakthrough Fellowship Program—that categorically excludes white and Asian-American applicants.

4.  Pfizer *requires* that applicants be Black/African American, Latino/Hispanic, or Native American. The Fellowship offers numerous benefits—a nine-year investment by Pfizer to provide professional mentorship, summer internships, post-undergraduate/post-graduate employment, and full scholarship for master's programs.

5.  According to Pfizer, however, white and Asian-American applicants need not apply.

6.  Pfizer's open exclusion of white and Asian-American applicants is illegal. Pfizer is blatantly discriminating against white and Asian-American applicants blocking the creation of contractual relationships solely based on race, in violation of §1981.

7.  And because Pfizer, a company principally engaged in healthcare, receives federal financial assistance by accepting reimbursement from federal healthcare programs and through other means, all its operations—including the Fellowship—are covered by the federal prohibitions on racial discrimination under Title VI and Section 1557. All racial classifications—much less outright racial bars—are subject to strict scrutiny under federal law, which Pfizer cannot come close to satisfying.

8.  Pfizer's racially exclusionary Fellowship is also illegal under New York State and New York City laws, which prohibit racial discrimination in, and racially discriminatory advertisements for, internships, training programs, and employment.

## PARTIES

9.      Plaintiff, Do No Harm, is a Virginia-based, nationwide membership organization con-

sisting of a diverse group of physicians, healthcare professionals, medical students, patients, and poli-

cymakers who want to protect healthcare from radical, divisive, and discriminatory ideologies, includ-

ing the recent rise in explicit racial discrimination in graduate and postgraduate medical programs.

10.      Do No Harm accomplishes its mission through education about and advocacy against

the divisive and discriminatory ideas being embedded within medical education, training, research,

practice, and policy. It has, among other things, filed litigation against the Biden administration for

introducing discriminatory "equity" criteria into Medicare and filed OCR complaints against medical

schools that create fellowships and scholarships that exclude whites and Asian-Americans.

11.      Do No Harm has at least two members who are being harmed by Pfizer's racially

discriminatory Fellowship and who are ready and able to apply for the 2023 class if Pfizer stops dis-

criminating against white and Asian-American applicants.

12.      Defendant Pfizer, Inc. is a healthcare pharmaceutical company that develops and man-

ufactures medicines and other therapeutics for patients.

13.      Pfizer is headquartered and has its principal place of business in New York City.

14.      Pfizer is running the racially discriminatory Breakthrough Fellowship Program.

15.      Pfizer receives federal financial assistance through federal healthcare program (*e.g.*,

Medicare and Medicaid) reimbursements and other monetary and non-monetary assistance.

## JURISDICTION AND VENUE

16.      This Court has subject-matter jurisdiction under 28 U.S.C. §1331, §1343, and §1367.

17.      Venue is proper under 28 U.S.C. §1391 because Pfizer's headquarters is located on 235

East 42nd Street in New York City, and its principal place of business is in New York City. A sub-

stantial part of the events or omissions giving rise to the claims also occurred in New York City.

## FACTUAL ALLEGATIONS

**A.    Pfizer principally engages in healthcare, participates in federal healthcare programs, and receives federal financial assistance.**

18.    Pfizer is a healthcare pharmaceutical company that develops and manufactures medicines and other therapeutics for patients.

19.    Pfizer's principal focus is healthcare.

20.    Pfizer also participates in the federal healthcare program, as defined in 42 U.S.C. §1320a-7b(f)(1), such as Medicare and Medicaid, by offering federally reimbursable products and medicines.

21.    Pfizer also works with healthcare providers, government health agencies, various research hospitals and institutes, and other pharmaceutical companies.

22.    For instance, at least between 2014 and 2019, Pfizer's Centers for Therapeutics Innovation hosted the National Institutes of Health ("NIH")'s researchers for an innovative collaboration. *See* NIH, *Pfizer's CTI for NIH Researchers* (last visited Sep. 15, 2022), bit.ly/3RMSl6A.

23.    In addition, Pfizer is part of the Accelerating Medicines Partnership ("AMP"), a public-private partnership between NIH, the Food and Drug Administration ("FDA") and private pharmaceutical companies. NIH, *Accelerating Medicines Partnership* (last visited Sep. 15, 2022), bit.ly/3xdwehL.

24.    AMP pulls together the collective expertise and resources of NIH, FDA, industry, and patient advocacy organizations to increase "the number of new diagnostics and therapies for patients and reduce the time and cost of developing them." *Id.*

25.    The AMP partnership has projects covering disease such as autoimmune diseases, metabolic diseases, gene therapy, Parkinson's disease, rheumatoid arthritis, lupus, and type 2 diabetes.

26.    AMP is managed through another organization called the Foundation for the NIH ("FNIH") which is governed and funded by the partners including NIH, FDA, and Pfizer.

4

27.     NIH provides a significant portion of AMP's budget.

28.     NIH has provided about $26.5 million for its autoimmune disease program[1]; about $40 million for the metabolic disease program[2]; about $39.5 million for the gene therapy program[3]; about $12 million for the Parkinson's disease program[4]; about $24.9 million for the rheumatoid arthritis and lupus program[5]; and about $31 million for the type 2 diabetes program.[6]

29.     Pfizer currently participates in every one of these NIH-funded collaborative programs.

30.     As a participant, Pfizer receives the results of the research and development by this NIH-funded partnership, "which will enable the development of new and effective therapies for people with autoimmune diseases." Nat'l Inst. of Arthritis & Musculoskeletal & Skin Diseases, *Letter from the Director* (last visited Sep. 15, 2022), bit.ly/3x2qOWI.

### B.     Pfizer launches and oversees the Breakthrough Fellowship Program, which excludes white and Asian-American applicants.

31.     In 2021, Pfizer launched the Breakthrough Fellowship Program which categorically excludes white and Asian-American applicants from applying. Pfizer, *Breakthrough Fellowship Program* (last visited Sep. 15, 2022), bit.ly/3KSRr66. Pfizer's announcements, FAQs, informational video, and advertisements for the Fellowship were published and widely circulated on the internet, including Pfizer's website, Facebook, and popular job sites like LinkedIn and ZipRecruiter.

32.     The Fellowship is a prestigious, multi-year program.

33.     Students in their junior year of college are eligible to apply to the Fellowship, which consists of five components.

---

[1] NIH, *Autoimmune and Immune-Mediated Diseases* (last visited Sep. 15, 2022), bit.ly/3Bw2Qpv.
[2] NIH, *Common Metabolic Diseases* (last visited Sep. 15, 2022), bit.ly/3RUVAJ0.
[3] NIH, *Bespoke Gene Therapy Consortium* (last visited Sep. 15, 2022), bit.ly/3QAo362.
[4] NIH, *Parkinson's Disease* (last visited Sep. 15, 2022), bit.ly/3TZP3Pf.
[5] NIH, *Autoimmune Diseases of Rheumatoid Arthritis and Lupus* (last visited Sep. 15, 2022), bit.ly/3Ljp9SN.
[6] NIH, *Type 2 Diabetes* (last visited Sep. 15, 2022), bit.ly/3qrMTKu.

34.     The first component consists of a 10-week summer internship for rising college seniors.

35.     In the second component, Pfizer offers the fellows two years of full-time employment following college graduation.

36.     After that, in the third component, Pfizer will pay a full scholarship for the fellows to complete a full-time, two-year program to obtain MBA, MPH, or MS in statistics.

37.     The fourth component consists of summer internship between the first and second years of the Pfizer-funded master's programs.

38.     The fifth component consists of the fellows' return to Pfizer for post-graduate employment.

39.     Pfizer boasts that this Fellowship is "first-of-its-kind."

40.     By comparison, Pfizer offers the Summer Growth Experience Program, which appears to be open to all applicants. Pfizer, *Pfizer Summer Growth Experience* (last visited Sep. 15, 2022), bit.ly/3qhiMFx.

41.     However, the Summer Growth Experience Program's investment in and commitment to its interns is nowhere as comprehensive as the Fellowship's investment in and commitment to the Breakthrough fellows, as the Summer Growth Experience Program does not appear to offer opportunities for post-undergraduate/post-graduate employment or scholarship for master's programs. *See id.*

42.     To apply to the 2023 class of the Breakthrough Fellowship, an applicant must: (1) be a U.S. citizen or permanent resident; (2) be enrolled in a full-time university program, with an expected graduation date in December 2023 or Spring 2024; (3) have a 3.0 GPA or higher; (4) have an interest and intent to pursue an MBA, MPH, or MS in statistics; (5) demonstrate leadership potential; and (6) be willing to work in Pfizer's New York City office or other locations.

43.     According to Pfizer, however, white and Asian-American applicants need not apply.

44.     Pfizer makes it clear that only Black/African American, Latino/Hispanic, and Native American applicants are eligible to apply to this Fellowship.

45.     Pfizer explains that an applicant must "[m]eet the program's goals of increasing the pipeline for Black/African American, Latino/Hispanic and Native Americans"; and it conspicuously leaves out otherwise-qualified white and Asian-American students from being eligible to apply.

46.     The informational video about the Fellowship that Pfizer posted on its website states that Pfizer intends that "by 2025, [it] will have a generation of 100 new leaders at Pfizer coming from underrepresented groups and lead … [the] organization." Pfizer, *Breakthrough Fellowship Program*.

47.     The informational video's visuals and drawings make it clear that the 100 fellows will be selected from "Black African American," "Latino Hispanic," and "Native American" applicants.





48.     The application window for the 2023 class of the Fellowship opened in late August. Although Pfizer has not announced when the application window will close, the application window is closing.

###### C.     Do No Harm's white and Asian-American members are ineligible to apply to the Fellowship solely on account of race.

49.     Do No Harm has at least two members in their junior year in college who are being harmed by Pfizer's racially discriminatory Fellowship.

50.     Member A is a member of Do No Harm.

51.     Member A is currently enrolled as a full-time student in junior year at an Ivy League university. Member A is expected to graduate in December 2023.

52.     Member A is a U.S. citizen.

53.     Member A's GPA is higher than a 3.0 average.

54.     Member A is involved in campus life and activities and holds leadership positions in student organizations.

55.     Member A is interested in applying to the Fellowship because it is a prestigious program that would provide Member A with a great professional development opportunity. Member A would greatly benefit from working in Pfizer's New York City office next summer and making professional connections and finding professional mentors.

56.     Member A is especially drawn to the Fellowship by the fact that Pfizer will pay a full scholarship for an MBA program.

57.     Member A meets all nonracial criteria for applying to the Fellowship. Yet because Member A is white, Member A is ineligible to apply.

58.     Member A is ready and able to apply to the Fellowship for the 2023 class if Pfizer stops discriminating against white and Asian-American applicants.

59.     Member A is prepared to meet the program's requirements and expectations if Member A is accepted and joins the Fellowship.

60.     Member B is a member of Do No Harm.

61.     Member B is currently enrolled as a full-time student in junior year at an Ivy League university. Member B is expected to graduate in Spring 2024.

62.     Member B is a U.S. citizen.

63.     Member B's GPA is higher than a 3.0 average.

64.     Member B is involved in campus life and activities and holds leadership positions in student organizations.

65.     Member B is interested in applying to the Fellowship because it is a prestigious program that would provide Member B with a great professional development opportunity. Member B would greatly enjoy working in Pfizer's New York City office next summer and meeting professional mentors.

66.     Member B is especially drawn to the Fellowship by the fact that Pfizer will pay a full scholarship for an MBA so Member B could gain valuable management skills.

67.     Member B meets all nonracial criteria for applying to the Fellowship. Yet because Member B is an Asian American, Member B is ineligible to apply.

68.     Member B is ready and able to apply to the Fellowship for the 2023 class if Pfizer stops discriminating against white and Asian-American applicants.

69.     Member B is prepared to meet the program's requirements and expectations if Member B gets accepted and joins the Fellowship.

70.     Do No Harm also has at least one member who is a sophomore who is ready and able to apply to the Fellowship next year if Pfizer stops discriminating.

**CLAIMS FOR RELIEF**

**COUNT I**
**Violation of the Civil Rights Act of 1866**
**42 U.S.C. §1981**

71.     Do No Harm repeats and realleges each of the prior allegations.

72.     The Civil Rights Act of 1866 ("§1981") states that "[a]ll persons … shall have the same right … to make and enforce contracts … and to the full and equal benefit of all laws … as is enjoyed by white citizens." 42 U.S.C. §1981(a).

73.     The Supreme Court has interpreted §1981 to "protec[t] the equal right of all persons … without respect to race." *Domino's Pizza, Inc v. McDonald*, 546 U.S. 470, 474 (2006) (cleaned up); *see also McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 298 (1976) (Section 1981 "was meant, by its broad terms, to proscribe discrimination in the making or enforcement of contracts against, or in favor of, any race.").

74.     Under §1981, "a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right," such as the right to make and enforce contracts. *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S.Ct. 1009, 1019 (2020). More specifically, the plaintiff must show "'discrimination concerning one of the statute's enumerated activities'" and "'defendant['s] intent to discriminate on the basis of race.'" *Felder v. U.S. Tennis Ass'n*, 27 F.4th 834, 848 (2d Cir. 2022).

75.     Section 1981 authorizes equitable and legal relief, including compensatory and punitive damages. *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459-60 (1975).

76.     Pfizer is violating §1981 by expressly excluding white and Asian-American applicants from the Fellowship solely based on race.

77.     The Fellowship implicates the activities enumerated under §1981: "making … of contracts."

78.     The Fellowship is designed to lead to a contractual relationship between Pfizer and the fellows.

79.     For example, in exchange for an offer of post-undergraduate/post-graduate employment and scholarship for master's degrees, the fellows agree to participate in the five components of the Fellowship and work as interns.

80.     Pfizer's discrimination against white and Asian-American applicants is intentional and based on race.

81.     Under §1981, "a plaintiff who alleges a policy that is discriminatory *on its face* is not required to make further allegations of discriminatory intent or animus." *Juarez v. Nw. Mut. Life Ins. Co., Inc.*, 69 F. Supp. 3d 364, 370 (S.D.N.Y. 2014).

82.     Pfizer's race requirement is not neutral—it constitutes an express classification (indeed, exclusion) based on race. Pfizer is *requiring* that applicants not be white or Asian American to be eligible to apply to the Fellowship.

### COUNT II
### Violation of Title VI of the Civil Rights Act
### 42 U.S.C. §2000d

83.     Do No Harm repeats and realleges each of the prior allegations.

84.     Title VI provides that no person "shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. §2000d.

85.     Title VI's protections are "coextensive with the Equal Protection Clause of the Fourteenth Amendment." *Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*, 980 F.3d 157, 185 (1st Cir. 2020).

86.     Under Title VI, "the term 'program or activity' and the term 'program' mean *all of the operations* of … an entire corporation": (i) "if assistance is extended to such corporation … as a whole"

or (ii) if the corporation "is principally engaged in the business of providing education, health care, housing, social services, or parks and recreation." 42 U.S.C. §2000d-4a(3)(A)(i)-(ii) (emphasis added).

87.     Private individuals and entities can sue to enforce Title VI and obtain both injunctive relief and damages. *See Alexander v. Sandoval*, 532 U.S. 275, 280 (2001).

88.     Pfizer is principally engaged in the business of providing "education, health care, housing, social services, or parks and recreation."

89.     Pfizer also receives federal assistance provided to it as a whole.

90.     Pfizer participates in federal healthcare programs, like Medicare and Medicaid, and receives reimbursement, directly and indirectly.

91.     Reimbursement from federal healthcare programs, like Medicare and Medicaid, constitute federal financial assistance.

92.     Pfizer is an intended recipient of reimbursement from federal healthcare programs.

93.     Furthermore, Pfizer receives federal financial assistance through other monetary and "nonmoney assistance." *U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 6713 n.14 (1986).

94.     HHS Title VI-implementing regulations—like various federal agencies' regulations—state that federal financial assistance includes "the detail of Federal personnel" and "any Federal … arrangement … which has as one of its purposes the provision of assistance." 45 C.F.R. §80.13(f)(2), (5).

95.     Pfizer receives federal financial assistance through NIH's personnel detailed to assist Pfizer.

96.     Pfizer further receives federal financial assistance through its participation in NIH-sponsored and -funded public-private partnerships, like FNIH's AMP, through which NIH provides its expertise, resources, and funding to assist pharmaceutical companies like Pfizer.

97.     FNIH's AMP is arranged with a purpose of providing assistance and benefitting pharmaceutical companies like Pfizer with the results of the research and development that come out of NIH-led collaboration.

98.     All of Pfizer's operations—including the Breakthrough Fellowship Program—are covered by Title VI.

99.     Pfizer is operating the racially discriminatory Fellowship, which excludes white and Asian-American applicants, like Do No Harm's Member A and Member B, from applying to and participating in the Fellowship.

100.     White and Asian-American applicants, like Member A and Member B, are and will be "excluded from participation in, be denied the benefits of, or be subjected to discrimination under" the Fellowship solely based on their race. §2000d.

101.     Pfizer's racial classification (and outright race-based exclusion) is subject to strict scrutiny, which it cannot satisfy.

102.     Pfizer cannot show a compelling interest for excluding white and Asian-American applicants from the Fellowship.

103.     A "generalized assertion that there has been past discrimination" cannot serve as a compelling interest for present racial segregation. *J.A. Croson Co.*, 488 U.S. at 498. Nor can providing "role models" for minority students. *Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267, 276 (1986). Ensuring "programming diversity" is also insufficient. *Lutheran Church-Mo. Synod v. FCC*, 141 F.3d 344, 350 (D.C. Cir. 1998). And "'[r]acial balance is not to be achieved for its own sake.'" *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 729-30 (2007).

104.     The complete exclusion of white and Asian-American applicants from the Fellowship is also not narrowly tailored.

105.    There is no evidence that Pfizer ever "considered methods other than explicit racial classification to achieve [its] stated goals." *Parents Involved*, 551 U.S. at 734.

106.    Nor can Defendants show "the most exact connection between justification and classification." *Wygant*, 476 U.S. at 280.

## COUNT III
## Violation of Section 1557 of the Affordable Care Act
## 42 U.S.C. §18116(a)

107.    Do No Harm repeats and realleges each of its prior allegations.

108.    Section 1557 of the Affordable Care Act states that "[a]n individual shall not, on the ground prohibited under title VI … be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, *any health program or activity, any part of which is receiving Federal financial assistance*, including credits, subsidies, or contracts of insurance." 42 U.S.C. §18116(a) (emphasis added).

109.    "The phrase 'health program or activity' in section 1557 plainly includes all the operations of a business principally engaged in providing healthcare." *T.S. ex rel. T.M.S.*, 43 F.4th 737, 743 (7th Cir. 2022).

110.    Consistent with Section 1557's plain text, HHS regulations define "health program or activity" to "encompas[s] all of the operations of entities principally engaged in the business of providing healthcare that receive Federal financial assistance," 45 C.F.R. §92.3(b), including those "provided by [HHS]," §92.3(a)(1).

111.    Private entities and individuals can sue to enforce Section 1557 and obtain both injunctive relief and damages. §18116(a).

112.    Pfizer holds itself out as being, and is, principally engaged in providing healthcare.

113.    Project Hope also receives federal financial assistance through federal healthcare program reimbursement and from other agencies.

114.    Pfizer's entire operations—including the Breakthrough Fellowship Program—are covered by Section 1557.

115.    White and Asian-American applicants, like Do Ho Harm's Member A and Member B, are and will be "excluded from participation in, be denied the benefits of, or be subjected to discrimination under" the Fellowship solely based on their race. §18116(a).

116.    In addition, because Pfizer is violating Title VI, it is also violating Section 1557.

## COUNT IV
## Violation of New York State Human Rights Law
## N.Y. Exec. Law §296-c(2)(a) – Ban on Racial Discrimination in Internships

117.    Do No Harm repeats and realleges each of the prior allegations.

118.    Under New York State law, it is unlawful for an employer to "refuse to hire or employ or to bar … from internship an intern or to discriminate against such intern … because of the intern's … race." N.Y. Exec. Law §296-c(2)(a).

119.    In addition, New York State law makes it unlawful to "discriminate against an intern in receiving, classifying, disposing or otherwise acting upon applications for internships because of the intern's … race." §296-c(2)(b).

120.    New York State law defines an "intern" as someone who performs work "for the purposes of training under the following circumstances: (a) the employer is not committed to hire the person at the end of the training period; (b) the employer and the person agree that the person performing work is not entitled to wages for the work performed; and (c) the work performed (1) provides training that may enhance the employability of the intern, (2) provides benefit and experience to the person performing the work, (3) does not displace regular employees, and (4) is performed under close supervision of existing staff. §296-c(1)(a)-(c).

121.    New York State law authorizes this Court to issue appropriate relief to prevent racial discrimination. §297(9).

122.     Pfizer's nine-year Fellowship includes internships.

123.     The Fellowship offers "[a]n initial 10-week summer internship for rising undergraduate college seniors."

124.     And Pfizer offers another summer internship between the first and second years of the all-paid-for master's program.

125.     Pfizer's racially exclusionary Fellowship is "discriminatory on its face" and requires no further direct evidence of discriminatory motive or intent, or burden-shifting analysis. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985); *Patrolmen's Benevolent Ass'n of City of N.Y. v. City of New York*, 74 F. Supp. 2d 321, 333 (S.D.N.Y. 1999).

126.     Pfizer readily concedes and broadcasts that its decision to create the racially discriminatory Fellowship was based on race—and to "[m]eet the program's goals of increasing the pipeline for Black/African American, Latino/Hispanic and Native Americans."

127.     Pfizer is categorically "bar[ring]" white and Asian-American applicants from applying to the Fellowship and "discriminat[ing] against" them because of their race. §296-c(2)(a).

**128.**     In addition, Pfizer is discriminating against white and Asian-American applicants "in receiving, classifying, disposing, or otherwise acting upon applications for internships because of … race." §296-c(2)(b).

## COUNT V
## Violation of New York City Human Rights Law
## N.Y.C. Admin. Code §§8-107(1), (23) – Ban on Racial Discrimination in Internships

129.     Do No Harm repeats and realleges each of the prior allegations.

130.     New York City law states that anti-discrimination protections for employees "apply to interns." N.Y.C. Admin. Code §8-107(23). And it is unlawful under New York City law to "bar" a person from internships because of "actual or perceived" "race" and to discriminate in handling applications. §8-107(1)(a)(2), (b).

131.    New York City law authorizes this Court to issue appropriate relief to prevent racial discrimination. N.Y.C. Admin. Code §8-502(a).

132.    Pfizer's nine-year Fellowship includes internships.

133.    Pfizer's racially exclusionary Fellowship is discriminatory on its face and requires no further direct evidence of discriminatory motive or intent, or burden-shifting analysis.

134.    Pfizer is categorically "bar[ring]" white and Asian-American applicants from applying to the Fellowship and "discriminat[ing] against" them because of their race. §8-107(1)(a)(2).

135.    In addition, Pfizer is discriminating against white and Asian-American applicants in receiving, classifying, disposing, or otherwise acting upon applications for internships because of race. §8-107(1)(b).

## COUNT VI
## Violation of New York State Human Rights Law
## N.Y. Exec. Law §296(1-a)(b) – Ban on Racial Discrimination in Training Programs

136.    Do No Harm repeats and realleges each of the prior allegations.

137.    New York State law makes it unlawful for an employer "[t]o deny or withhold from any person because of race …, color, [and] national origin …, the right to be admitted or participate in a guidance program, an apprenticeship training program, on-the-job training program, executive training program, or other occupational training or retraining program." N.Y. Exec. Law §296(1-a)(b).

138.    New York State law authorizes this Court to issue appropriate relief to prevent racial discrimination. §297(9).

139.    Pfizer's Fellowship constitutes a training program.

140.    The Fellowship was designed to ensure that "students receive mentoring and professional development" as well as the "the opportunity to grow within the organization."

141.    With multiple summers of internship experience and fully-paid-for master's program, Pfizer is making a substantial investment in training the fellows.

142.     Nevertheless, Pfizer is categorically "deny[ing]" and "withhold[ing] from" white and Asian-American applicants "the right to be admitted or participate" in the Fellowship solely because of their race.

143.     Pfizer's racially exclusionary Fellowship is discriminatory on its face and requires no further direct evidence of discriminatory motive or intent, or burden-shifting analysis.

## COUNT VII
### Violation of New York City Human Rights Law
### N.Y.C. Admin. Code §8-107(2)(b) – Ban on Racial Discrimination
### in Training Programs

144.     Do No Harm repeats and realleges each of the prior allegations.

145.     New York City law makes it to unlawful "deny to or withhold from any person because of his or her actual or perceived race … the right to be admitted to or participate in a guidance program, an apprentice training program, on-the-job program, or other occupational training or retraining program." N.Y.C. Admin. Code §8-107(2)(b).

146.     New York City law authorizes this Court to issue appropriate relief to prevent racial discrimination. N.Y.C. Admin. Code §8-502(a).

147.     Pfizer's Fellowship constitutes a training program.

148.     Pfizer is denying and withholding from white and Asian-American applicants the right to be admitted to and participate in the Fellowship because of their race.

149.     Pfizer's racially exclusionary Fellowship is discriminatory on its face and requires no further direct evidence of discriminatory motive or intent, or burden-shifting analysis.

## COUNT VIII
### Violation of New York State Human Rights Law
### N.Y. Exec. Law §296(1)(A) – Ban on Racial Discrimination in Employment

150.     Do No Harm repeats and realleges each of the prior allegations.

151.    New York State law makes it unlawful "for an employer, because of an individual's …
race …, to refuse to hire or employ or to bar … from employment such individual …." N.Y. Exec.
Law §296(1)(a).

152.    New York State law authorizes this Court to issue appropriate relief to prevent racial
discrimination. §297(9).

153.    The Fellowship is designed to lead to two years of post-undergraduate employment
and post-graduate employment following the all-paid-for master's program.

154.    However, because of white and Asian-American applicants' race, Pfizer is categorically
barring them from the employment opportunities that come through the Fellowship.

155.    Alternatively, the summer internships for the fellows constitute employment.

156.    Pfizer is barring white and Asian-American applicants from the summer internship
programs based on race.

157.    Pfizer's racially exclusionary Fellowship is discriminatory on its face and requires no
further direct evidence of discriminatory motive or intent, or burden-shifting analysis.

## COUNT IX
### Violation of New York City Human Rights Law
### N.Y.C. Admin. Code §8-107(1)(a)(2) – Ban on Racial Discrimination in Employment

158.    Do No Harm repeats and realleges each of the prior allegations.

159.    New York City law makes it unlawful for an employer to "refuse to hire or employ or
to bar … from employment" "any person" because of race. N.Y.C. Admin. Code §8-107(1)(a)(2).

160.    New York City law authorizes this Court to issue appropriate relief to prevent racial
discrimination. N.Y.C. Admin. Code §8-502(a).

161.    The Fellowship is designed to lead to two years of post-undergraduate employment
and post-graduate employment following the all-paid-for master's program.

162.    However, because of white and Asian-American applicants' race, Pfizer is categorically barring them from the employment opportunities that come through the Fellowship.

163.    Alternatively, the summer internships for the fellows constitute employment.

164.    Pfizer is barring white and Asian-American applicants from the summer internship programs based on race.

165.    Pfizer's racially exclusionary Fellowship is discriminatory on its face and requires no further direct evidence of discriminatory motive or intent, or burden-shifting analysis.

**COUNT X**
**Violation of New York State Human Rights Law**
**N.Y. Exec. Law §296-c(2)(a) – Ban on Discriminatory Advertising in Internships**

166.    Do No Harm repeats and realleges each of the prior allegations.

167.    New York State law makes it unlawful to "print or circulate … any statement, advertisement or publication, or to use any form of application for employment as an intern," which "expresses, directly or indirectly, any limitation, specification or discrimination as to … race, … or any intent to make such limitation, specification or discrimination." N.Y. Exec. Law §296-c(2)(c).

168.     New York State law authorizes this Court to issue appropriate relief to prevent racial discrimination. §297(9).

169.    The Fellowship includes internships.

170.    Pfizer's announcement for the Fellowship directly and indirectly expresses limitation, specification, and discrimination based on race.

171.    Pfizer's announcement states that the Fellowship requires that the applicant be Black/African American, Latino/Hispanic, or Native American.

172.    White and Asian-American applicants need not apply, according to Pfizer.

173.    Pfizer's announcements, FAQs, informational video, and advertisements for the Fellowship were published and widely circulated on the internet, including Pfizer's website, Facebook, and popular job sites like LinkedIn and ZipRecruiter.

**COUNT XI**
**Violation of New York City Human Rights Law**
**N.Y.C. Admin. Code §§8-107(1)(d), (23) – Ban on Discriminatory Advertising**
**in Internships**

174.    Do No Harm repeats and realleges each of the prior allegations.

175.    New York City law makes it unlawful for an employer to "declare, print or circulate … any statement, advertisement or publication, or to use any form of application for employment," which "expresses directly or indirectly, any limitation, specification or discrimination as to … race." N.Y.C. Admin. Code §8-107(1)(d). New York City law states that the term "employee" "shall apply to interns." §8-107(23).

176.    New York City law authorizes this Court to issue appropriate relief to prevent racial discrimination. N.Y.C. Admin. Code §8-502(a).

177.    The Fellowship includes internships.

178.    Pfizer's announcement for the Fellowship directly and indirectly expresses limitation, specification, and discrimination based on race.

179.    Pfizer's announcement states that the Fellowship requires that the applicant be Black/African American, Latino/Hispanic, or Native American.

180.    White and Asian-American applicants need not apply, according to Pfizer.

181.    Pfizer's announcements, FAQs, informational video, and advertisements for the Fellowship were published and widely circulated on the internet, including Pfizer's website, Facebook, and popular job sites like LinkedIn and ZipRecruiter.

**COUNT XII**
**Violation of New York State Human Rights Law**
**N.Y. Exec. Law §296(1-a)(d) – Ban on Discriminatory Advertising**
**in Training Programs**

182.    Do No Harm repeats and realleges each of the prior allegations.

183.    New York State law makes it unlawful to "print or circulate … any statement, adver-tisement or publication, or to use any form of application for [training] programs," which "expresses, directly or indirectly, any limitation, specification or discrimination as to … race, … color, [and] na-tional origin, … or any intent to make such limitation, specification or discrimination.". N.Y. Exec. Law §296(1-a)(d).

184.    New York State law authorizes this Court to issue appropriate relief to prevent racial discrimination. §297(9).

185.    The Fellowships constitutes a training program.

186.    Pfizer's announcement for the Fellowship directly and indirectly expresses limitation, specification, and discrimination based on race.

187.    Pfizer's announcement states that the Fellowship requires that the applicant be Black/African American, Latino/Hispanic, or Native American.

188.    White and Asian-American applicants need not apply, according to Pfizer.

189.    Pfizer's announcements, FAQs, informational video, and advertisements for the Fel-lowship were published and widely circulated on the internet, including Pfizer's website, Facebook, and popular job sites like LinkedIn and ZipRecruiter.

**COUNT XIII**
**Violation of New York City Human Rights Law**
**N.Y.C. Admin. Code §8-107(2)(d) – Ban on Discriminatory Advertising**
**in Training Programs**

190.    Do No Harm repeats and realleges each of the prior allegations.

191. New York City law makes it unlawful for an employer to "declare, print or circulate … any statement, advertisement or publication, or to use any form of application for [training] program[s]," which "expresses directly or indirectly, any limitation, specification or discrimination as to … race." N.Y.C. Admin. Code §8-107(2)(d).

192. New York City law authorizes this Court to issue appropriate relief to prevent racial discrimination. N.Y.C. Admin. Code §8-502(a).

193. The Fellowships constitutes a training program.

194. Pfizer's announcement for the Fellowship directly and indirectly expresses limitation, specification, and discrimination based on race.

195. Pfizer's announcement states that the Fellowship requires that the applicant be Black/African American, Latino/Hispanic, or Native American.

196. White and Asian-American applicants need not apply, according to Pfizer.

197. Pfizer's announcements, FAQs, informational video, and advertisements for the Fellowship were published and widely circulated on the internet, including Pfizer's website, Facebook, and popular job sites like LinkedIn and ZipRecruiter.

## COUNT XIV
## Violation of New York State Human Rights Law
## N.Y. Exec. Law §8-107(1)(d)– Ban on Discriminatory Advertising in Employment

198. Do No Harm repeats and realleges each of the prior allegations.

199. New York State law makes it unlawful to "print or circulate … any statement, advertisement or publication, or to use any form of application for employment," which "expresses, directly or indirectly, any limitation, specification or discrimination as to … race, … color, [and] national origin, … or any intent to make such limitation, specification or discrimination." N.Y. Exec. Law §296(1)(d).

200.     New York State law authorizes this Court to issue appropriate relief to prevent racial discrimination. §297(9).

201.     The Fellowship is designed to lead to two years of post-undergraduate employment and post-graduate employment following the all-paid-for master's program.

202.     Alternatively, the summer internships for the fellows constitute employment.

203.     Pfizer's announcement states that the Fellowship requires that the applicant be Black/African American, Latino/Hispanic, or Native American.

204.     White and Asian-American applicants need not apply, according to Pfizer.

205.     Pfizer's announcements, FAQs, informational video, and advertisements for the Fellowship were published and widely circulated on the internet, including Pfizer's website, Facebook, and popular job sites like LinkedIn and ZipRecruiter.

**COUNT XV**
**Violation of New York City Human Rights Law**
**N.Y.C. Admin. Code §8-107(1)(d)– Ban on Discriminatory Advertising**
**in Employment**

206.     Do No Harm repeats and realleges each of the prior allegations.

207.     New York City law makes it unlawful for an employer to "declare, print or circulate … any statement, advertisement or publication, or to use any form of application for employment," which "expresses directly or indirectly, any limitation, specification or discrimination as to … race." N.Y.C. Admin. Code §8-107(2)(d).

208.     New York City law authorizes this Court to issue appropriate relief to prevent racial discrimination. N.Y.C. Admin. Code §8-502(a).

209.     The Fellowship is designed to lead to two years of post-undergraduate employment and post-graduate employment following the all-paid-for master's program.

210.     Alternatively, the summer internships for the fellows constitute employment.

211.    Pfizer's announcement states that the Fellowship requires that the applicant be Black/African American, Latino/Hispanic, and Native American.

212.    White and Asian-American applicants need not apply, according to Pfizer.

213.    Pfizer's announcements, FAQs, informational video, and advertisements for the Fellowship were published and widely circulated on the internet, including Pfizer's website, Facebook, and popular job sites like LinkedIn and ZipRecruiter.

## PRAYER FOR RELIEF

Do No Harm respectfully requests that this Court enter judgment in its favor and against Pfizer and provide the following relief:

A.    A declaratory judgment that Pfizer's Breakthrough Fellowship Program violates Section 1981, Title VI, Section 1557 of the Affordable Care Act, New York State law, and New York City law;

B.    A temporary restraining order and preliminary injunction barring Pfizer from selecting the 2023 class of the Fellowship until further order of the Court; barring Pfizer from enforcing their racially discriminatory eligibility requirements for the Pfizer Breakthrough Fellowship Program; staying the application deadline until the Court deems proper; and preventing Pfizer from posting racially discriminatory advertisements for the Pfizer Breakthrough Fellowship Program indicating that white and Asian-American applicants are not eligible for the Fellowship;

C.    A permanent injunction barring Pfizer from maintaining racially discriminatory eligibility requirements for the Fellowship; ordering Pfizer to formulate new eligibility requirements that are race neutral; and preventing Pfizer from posting and circulating racially discriminatory advertisements for the Fellowship;

D.    Nominal damages of $1;

E.    Reasonable costs and expenses of this action, including attorneys' fees, under 42 U.S.C. §1988 and any other applicable laws; and

F.    All other relief that Do No Harm is entitled to, as the Court deems just and proper.

Dated: September 15, 2022

Respectfully submitted,

*/s/ Cameron T. Norris*
Thomas R. McCarthy*
Cameron T. Norris*
Frank H. Chang*
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
cam@consovoymccarthy.com
frank@consovoymccarthy.com

*/s/ Dennis J. Saffran*
Dennis J. Saffran
38-18 West Drive
Douglaston, NY 11363
(718) 428-7156
djsaffranlaw@gmail.com

*\*Pro hac vice applications forthcoming*

## VERIFICATION

I, Kristina Rasmussen, declare as follows:

1.      I am over the age of 18, of sound mind, and otherwise competent to sign this verification.

2.      I am the Executive Director of Do No Harm.

3.      I have reviewed this verified complaint.

4.      For the allegations within my personal knowledge, I believe them all to be true.

5.      For the allegations not within my personal knowledge, I believe them to be all true based on my review of the cited policies and documents.

6.      Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.


Executed on September 15, 2022

Kristina Rasmussen
Executive Director of Do No Harm

27