**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DO NO HARM,

                        Plaintiff,

             - v. -

PFIZER INC.,

                       Defendant.

Case No. 1:22-cv-07908 (JLR)


**DEFENDANT PFIZER INC.'S MEMORANDUM OF LAW IN OPPOSITION**
**TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**


PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064

*Attorneys for Defendant Pfizer Inc.*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ...................................................................................................... 2

I.      Pfizer ........................................................................................................................... 2

II.     The Breakthrough Fellowship Program & Pfizer's Other Early Career Programs ........... 3

III.    Pfizer's Business and Its Relationship with the Federal Government .............................. 5

IV.     This Litigation ............................................................................................................. 5

ARGUMENT .......................................................................................................................... 6

I.      Plaintiff Cannot Demonstrate a Clear Likelihood of Success on the Merits. .................... 6

        A.      Plaintiff Lacks Article III Standing ........................................................................ 7

                1.      Members A and B Do Not Have Standing ................................................... 7

                        (a)     The Declarations Do Not Demonstrate the Members'
                                Standing. ........................................................................................ 8

                        (b)     Anonymous, Unsworn Declarations Are Insufficient ..................... 9

                2.      Participation by Members A and B is Required. ........................................ 10

        B.      Plaintiff Is Not Likely to Succeed on Its Section 1981 Claim ................................ 10

                1.      Plaintiff Lacks Standing to Bring a Section 1981 Claim ........................... 11

                2.      Pfizer Has a Legitimate, Non-Discriminatory Reason for Its Race-
                        Conscious Fellowship Criterion ................................................................ 12

                3.      Plaintiff Cannot Show Pretext. ................................................................. 14

                        (a)     Plaintiff Cannot Show Pretext through the Absence of
                                Manifest Imbalance ...................................................................... 14

                        (b)     The Fellowship Does Not Unnecessarily Trammel the
                                Rights of Non-Minorities or Bar Their Advancement ................... 15

                4.      Plaintiff Cannot Demonstrate But-For Causation ...................................... 16

        C.      Plaintiff Is Unlikely to Succeed on Its Title VI and Section 1557 Claims. ............ 16

                1.      Pfizer Is Not a Healthcare Provider and Does Not Receive Federal
                        Assistance as a Whole ................................................................................ 17

                2.      The Fellowship is Not Subject to Program-Specific Coverage
                        under Title VI or Section 1557. ................................................................. 19

        D.      Plaintiff Is Unlikely to Succeed on Its Discrimination and Advertising
                Claims under NYSHRL and NYCHRL .................................................................. 19

                1.      Plaintiff Fails to Allege Any Purportedly Discriminatory Conduct
                        Which Had an Impact In New York. .......................................................... 20

2.     Plaintiff Fails to Demonstrate a Likelihood of Success on the Merits of Its State- and City-Law Employment Discrimination Claims ................................................................................................... 21

3.     Plaintiff Fails to Demonstrate a Likelihood of Success on the Merits of Its State- and City-Law Advertising Claims ............................ 21

II.     Plaintiff Cannot Demonstrate Irreparable Harm. ............................................... 23

III.     The Balance of the Equities Tips Decidedly in Pfizer's Favor. ......................................... 24

IV.     The Public Interest Favors Upholding the Fellowship's Race-Conscious Criterion. ........ 25

CONCLUSION .............................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdus-Sabur* v. *Hope Vill., Inc.*,
  221 F. Supp. 3d 3 (D.D.C. 2016) ............................................................................19

*Adams* v. *City of New York*,
  837 F. Supp. 2d 108 (E.D.N.Y. 2011) ....................................................................21

*Adarand Constructors, Inc.* v. *Pena*,
  515 U.S. 200 (1995)................................................................................................24

*Amaya* v. *Ballyshear LLC*,
  340 F. Supp. 3d 215 (E.D.N.Y. 2018) ....................................................................21

*Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds* v.
*Tightseal Constr. Inc.*,
  2018 WL 3910827 (S.D.N.Y. Aug. 14, 2018).........................................................12

*Ass'n Against Discrimination in Emp., Inc.* v. *City of Bridgeport*,
  647 F.2d 256 (2d Cir. 1981)....................................................................................19

*Barnhill* v. *City of Chi., Police Dep't*,
  142 F. Supp. 2d 948 (N.D. Ill. 2001) ......................................................................23

*Bell & Howell: Mamiya Co.* v. *Masel Supply Co. Corp.*,
  719 F.2d 42 (2d Cir. 1983)......................................................................................23

*Benisek* v. *Lamone*,
  138 S. Ct. 1942 (2018)............................................................................................25

*Bernier* v. *Trump*,
  242 F. Supp. 3d 31 (D.D.C. 2017) ..........................................................................18

*Bimber's Delwood, Inc.* v. *James*,
  496 F. Supp. 3d 760 (W.D.N.Y. 2020).....................................................................20

*In re Birmingham Reverse Discrimination Emp. Litig.*,
  20 F.3d 1525 (11th Cir. 1994) ..........................................................................15, 16

*In re Birmingham Reverse Discrimination Emp. Litig.*,
  833 F.2d 1492 (11th Cir. 1987) ..............................................................................25

*Bloomberg* v. *N.Y.C. Dep't of Educ.*,
  410 F. Supp. 3d 608 (S.D.N.Y. 2019)......................................................................19

*Boswell* v. *SkyWest Airlines, Inc.*,
    217 F. Supp. 2d 1212 (D. Utah 2002) .......................................................................18, 19

*Broich* v. *Incorporated Village of Southampton*,
    462 F. App'x 39 (2d Cir. 2012) ...................................................................................12

*Capstone Logistics Holdings, Inc.* v. *Navarrete*,
    736 F. App'x 25 (2d Cir. 2018) ...................................................................................6

*Carroll* v. *Nakatani*,
    342 F.3d 9343 (9th Cir. 2003) .....................................................................................9

*Cave* v. *E. Meadow Union Free Sch. Dist.*,
    514 F.3d 240 (2d Cir. 2008) .......................................................................................20

*Clapper* v. *Amnesty Int'l USA*,
    568 U.S. 398 (2013) .....................................................................................................8

*Coal. for Equity & Excellence in Maryland Higher Educ.* v. *Maryland Higher
    Educ. Comm'n*,
    295 F. Supp. 3d 540 (D. Md. 2017) ..........................................................................24

*Collins* v. *Giving Back Fund*,
    2019 WL 3564578 (S.D.N.Y. Aug. 6, 2019) .......................................................17, 18

*Comcast Corp.* v. *Nat'l Ass'n of African Am.-Owned Media & Ent. Studios
    Network, Inc.*,
    140 S. Ct. 1009 (2020) ..........................................................................................11, 16

*Correll* v. *Amazon.com, Inc.*,
    2022 WL 5264496 (S.D. Cal. Oct. 6, 2022) ................................................................9

*Davis* v. *Fed. Election Comm'n*,
    554 U.S. 724 (2008) .....................................................................................................7

*Disability Advocates, Inc.* v. *N.Y. Coal. for Quality Assisted Living, Inc.*,
    675 F.3d 149 (2d Cir. 2014) .........................................................................................7

*Doe* v. *Kamehameha Schs.*,
    470 F.3d 827 (9th Cir. 2006) ..........................................................................14, 15, 16

*Doe* v. *L.A. Unified Sch. Dist.*,
    2017 WL 797152 (C.D. Cal. Feb. 27, 2017) .............................................................10

*Doe* v. *Rensselaer Polytechnic Inst.*,
    2019 WL 181280 (N.D.N.Y. Jan. 11, 2019) .............................................................24

*Domino's Pizza, Inc.* v. *McDonald*,
546 U.S. 470 (2006) ...........................................................................................12

*Drachman* v. *Bos. Sci. Corp.*,
258 F. Supp. 3d 207 (D. Mass. 2017) ...............................................................18

*Equal Vote Am. Corp.* v. *Congress*,
397 F. Supp. 3d 503 (S.D.N.Y. 2019) .................................................................9

*Faculty* v. *Harvard Law Review Association*,
2019 WL 3754023 (D. Mass. Aug. 8, 2019) ....................................................8, 9

*Faculty* v. *New York Univ.*,
11 F.4th 68 (2d Cir. 2021) .............................................................................7, 8, 9

*Fair Hous. Council of Suburban Phila.* v. *Main Line Times*,
141 F.3d 439 (3d Cir. 1998).................................................................................22

*Free Speech Coal., Inc.* v. *Attorney Gen. United States*,
974 F.3d 408 (3d Cir. 2020)................................................................................10

*Freeman* v. *Rochester Psychiatric Ctr.*,
2015 WL 4250892 (W.D.N.Y. July 10, 2015).....................................................24

*Goldman* v. *MCL Cos. of Chi., Inc.*,
131 F. Supp. 2d 425 (S.D.N.Y. 2000).............................................................11, 12

*Grove City Coll.* v. *Bell*,
465 U.S. 555 (1984)..............................................................................................18

*Grutter* v. *Bollinger*,
539 U.S. 306 (2003)..............................................................................................13

*Hanson Trust PLC* v. *SCM Corp.*,
774 F.2d 47 (2d Cir. 1985)......................................................................................6

*Hoffman* v. *Parade Publ'ns*,
15 N.Y.3d 285 (2010) ...........................................................................................20

*Hum. Res. Mgmt., Inc.* v. *Weaver*,
442 F. Supp. 241 (D.D.C. 1977).........................................................................24

*Hunt* v. *Wash. State Apple Adver. Comm'n*,
432 U.S. 333 (1977)..........................................................................................7, 10

*Johnson* v. *Cnty. of Nassau*,
411 F. Supp. 2d 171 (E.D.N.Y. 2006) .................................................................19

*Johnson* v. *Transp. Agency, Santa Clara Cnty.*,
    480 U.S. 616 (1987) ............................................................................................. *passim*

*Juarez* v. *Nw. Mut. Life Ins. Co.*,
    69 F. Supp. 3d 364 (S.D.N.Y. 2014) ....................................................................... 14

*Kelly* v. *Rice*,
    375 F. Supp. 2d 203 (S.D.N.Y. 2005) ...................................................................... 19

*Kraiem* v. *JonesTrading Institutional Servs. LLC.*,
    492 F. Supp. 3d 184 (S.D.N.Y. 2020) ...................................................................... 21

*Kumaga* v. *N.Y.C. Sch. Const. Auth.*,
    2010 WL 14444513 (Sup. Ct. N.Y. Cnty. Apr. 2, 2010) ......................................... 21

*Lauture* v. *IBM Corp.*,
    216 F.3d 258 (2d Cir. 2000) .................................................................................... 11

*Lincoln Cercpac* v. *Health & Hosps. Corp.*,
    920 F. Supp. 488 (S.D.N.Y. 1996) .......................................................................... 24

*Martin* v. *Wilks*,
    490 U.S. 755 (1989) ................................................................................................ 25

*Mazurek* v. *Armstrong*,
    520 U.S. 968 (1997) .................................................................................................. 6

*McDermott* v. *N.Y. Metro LLC*,
    664 F. Supp. 2d 294 (S.D.N.Y. 2009) ...................................................................... 21

*McGehee* v. *Neb. Dep't of Corr. Servs.*,
    2019 WL 266423 (D. Neb. Jan. 17, 2019) ............................................................... 10

*Moses* v. *Comcast Cable Commc'ns Mgmt., LLC*,
    2022 WL 2046345 (S.D. Ind. June 7, 2022) ............................................................ 24

*United States* v. *N.Y.C. Bd. of Educ.*,
    2002 WL 31663069 (E.D.N.Y. Nov. 26, 2002) ........................................................ 23

*N.Y.S. Citizens' Coal. For Children* v. *Velez*,
    629 F. App'x 924 (2d Cir. 2015) .............................................................................. 11

*United States* v. *Nastasi*,
    2002 WL 1267995 (E.D.N.Y. Apr. 17, 2002) .......................................................... 19

*Nnebe* v. *Daus*,
    644 F.3d 147 (2d Cir. 2011) .................................................................................... 11

*Parents Involved in Cmty. Sch.* v. *Seattle Sch. Dist. No. 1*,
    551 U.S. 701 (2007).................................................................................24

*Patrolmen's Benev. Ass'n of City of N.Y., Inc.* v. *City of New York*,
    74 F. Supp. 2d 321 (S.D.N.Y. 1999)..............................................13, 14

*Patterson* v. *County of Oneida*,
    375 F.3d 206 (2d Cir. 2004)........................................................10

*Pinckney* v. *Bd. of Educ. of Westbury Union Free Sch. Dist.*,
    920 F. Supp. 393 (E.D.N.Y. 1996) ...............................................24

*Residents & Families United to Save Our Adult Homes* v. *Zucker*,
    2018 WL 1175152 (E.D.N.Y. Mar. 6, 2018) ...................................9

*Salinger* v. *Colting*,
    607 F.3d 68 (2d Cir. 2010).........................................................23

*Schmitt* v. *Kaiser Found. Health Plan of Wash.*,
    965 F.3d 945 (9th Cir. 2020) ......................................................18

*Shea* v. *Kerry*,
    796 F.3d 42 (D.C. Cir. 2015).......................................................15

*Shea* v. *Kerry*,
    961 F. Supp. 2d 17 (D.D.C. 2013) ...............................................13

*Shehab* v. *Chas. H. Sells, Inc.*,
    2006 WL 938715 (S.D.N.Y. Mar. 29, 2006) ..................................13

*Shiber* v. *Centerview Partners LLC*,
    2022 WL 1173433 (S.D.N.Y. Apr. 20, 2022)..................................20

*Sidibe* v. *MEI-GSR Holdings LLC*,
    2020 WL 1516807 (D. Nev. Mar. 27, 2020) ..................................16

*Soberal-Perez* v. *Heckler*,
    717 F.2d 36 (2d Cir. 1983)..........................................................20

*Students for Fair Admissions, Inc.* v. *President & Fellows of Harvard Coll.*,
    397 F. Supp. 3d 126 (D. Mass. 2019) ..........................................20

*Summers* v. *Earth Island Inst.*,
    555 U.S. 488 (2009).............................................................9, 10

*T.W.* v. *N.Y.S. Bd. of L. Examiners*,
    996 F.3d 87 (2d Cir. 2021)..........................................................19

*Tom Doherty Assocs., Inc.* v. *Saban Ent., Inc.*,
   60 F.3d 27 (2d Cir. 1995)................................................................................6

*TransUnion LLC* v. *Ramirez*,
   141 S. Ct. 2190 (2021)..................................................................................8

*New York* v. *U.S. Dep't of Homeland Sec.*,
   969 F.3d 42 (2d Cir. 2020)...........................................................................7

*UAW* v. *Johnson Controls, Inc.*,
   499 U.S. 187 (1991)....................................................................................14

*United Food & Com. Workers Union Loc. 751* v. *Brown Grp., Inc.*,
   517 U.S. 544 (1996)....................................................................................10

*United Steelworkers of America* v. *Weber*,
   443 U.S. 193 (1979)....................................................................14, 15, 25

*Valentine* v. *Smith*,
   654 F.2d 503 (8th Cir. 1981) ......................................................................16

*We The Patriots USA, Inc.* v. *Hochul*,
   17 F.4th 266 (2d Cir. 2021) ........................................................................24

*Weinreb* v. *Xerox Bus. Servs., LLC Health & Welfare Plan*,
   323 F. Supp. 3d 501 (S.D.N.Y. 2018)........................................................16

*Weser* v. *Glen*,
   190 F. Supp. 2d 384 (E.D.N.Y. 2002) .......................................................22

*Wilson* v. *Glenwood Intermountain Props.*,
   98 F.3d 590 (10th Cir. 1996) ......................................................................21

*Winter* v. *Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008)..........................................................................................6

**Statutes & Regulations**

29 C.F.R. § 825.125(a)(1)-(2)............................................................................17

29 C.F.R. § 1608.1(b)-(c)..................................................................................13

42 C.F.R. § 400.202 (2012)...............................................................................17

45 C.F.R. § 92.3(b) ...........................................................................................17

15 U.S.C. § 631f(1)............................................................................................13

28 U.S.C. § 1746................................................................................................10

42 U.S.C. § 1395x(u) ....................................................................................................17

42 U.S.C. § 1981 ................................................................................................ *passim*

42 U.S.C. § ff .............................................................................................................11

42 U.S.C. § 2000d ............................................................................................. *passim*

42 U.S.C. § 18116 ............................................................................................. *passim*

N.Y.C. Admin. Code § 8-107 *et. seq.* ............................................................. *passim*

N.Y. Exec. Law § 296 *et seq.* .......................................................................... *passim*

**Other Authorities**

11A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure
    § 2948.2 (3d ed. Apr. 2022) .................................................................................25

Stedman's Medical Dictionary (Nov. 2014) ..............................................................17

## PRELIMINARY STATEMENT

Pfizer created the Breakthrough Fellowship Program (the "Fellowship") to improve diversity within its higher ranks through the development of a pipeline for underrepresented talent. A nine-year commitment to the 100 fellows whom Pfizer aims to recruit over five years, the Fellowship is one of Pfizer's efforts to cultivate its next generation of leaders.

Plaintiff Do No Harm asks the Court, on behalf of two unidentified "members," for an extraordinary remedy: a mandatory injunction that would enjoin Pfizer from selecting its 2023 Fellowship class of future leaders and require Pfizer to change the existing criteria for its Fellowship. ECF No. 5 at 1–2. Because Plaintiff has failed to carry its heavy burden to establish all of the elements necessary for such an injunction, its motion should be denied.

*First*, as an organization, Plaintiff lacks associational Article III standing to bring any of its claims because its members lack standing to sue and their participation is required in this action.

*Second*, Plaintiff does not show a clear likelihood of success on its claims. Plaintiff's § 1981 claim will fail because Plaintiff lacks standing and Pfizer's Fellowship is lawful under Supreme Court precedent. Plaintiff's Title VI and § 1557 claims will fail because Pfizer is not a healthcare provider and does not receive general federal financial assistance or assistance earmarked for the Fellowship. Plaintiff's claims under the New York State and New York City Human Rights Laws will fail for the same reasons that the § 1981 claim fails and because Plaintiff fails to show that the impact of the allegedly discriminatory activity would be felt in New York.

*Third*, Plaintiff cannot demonstrate irreparable harm, as it is well established that harm stemming from the alleged denial of equal treatment in the employment context is not irreparable.

*Fourth*, the balance of equities weighs heavily against an injunction. Granting the injunction would prevent Pfizer from meeting its goals of increasing diversity among its leadership ranks and interfere with its ability to hire a new class of highly qualified and diverse talent in the

upcoming recruitment cycle.  The harm would disproportionately affect Pfizer because the time, resources, and human capital lost as a result of the injunction could not be remedied even by a victory at trial.  On the other hand, denying the injunction would simply preserve the status quo.

*Fifth*, the public interest weighs against a preliminary injunction.  A ruling in Plaintiff's favor would not serve the public interest, but instead would thwart decades of precedent that has provided opportunities for underrepresented minorities.

## STATEMENT OF FACTS

### I.     Pfizer

Pfizer is a global research-based company engaged in the business of the discovery, development, manufacture, marketing, sale and distribution of biopharmaceutical products. Declaration of Edward Gramling ("Gramling Decl.") ¶ 3.  Diversity and inclusion are core values at Pfizer.  Pfizer strives to recruit and retain highly talented, diverse employees so that its workforce reflects the communities it serves and because diverse teams make better business decisions and create a more inclusive work environment.  Declaration of Nancy Bruce ("Bruce Decl.") ¶ 4.

Like many companies, Pfizer has faced challenges in recruiting, retaining, and promoting diverse talent.  In 2019 and 2020, Pfizer employees who identified as Black/African American, Latino/Hispanic, or Native American made up small percentages of Pfizer's workforce at the analyst, manager, and director levels—between 0 and 8 percent.  *Id*. ¶ 7.  Pfizer's difficulties in recruiting and retaining diverse college graduates for analyst-level roles and diverse master's degree holders for manager-level positions, in particular, have contributed to decreasing percentages of Black/African American, Latino/Hispanic, and Native American representation as role-levels increase.  *Id.* ¶ 7.  The Breakthrough Fellowship Program was specifically designed to address this issue and increase the representation of under-represented groups in leadership

2

positions at Pfizer.  *Id.* ¶¶ 11–12.

As part of these efforts, Pfizer adopted its Opportunity Parity Goals in 2019, which are focused on increasing gender and racial diversity in Pfizer's leadership over the next five years. *Id*. ¶ 9.  By 2025, Pfizer aims to increase U.S. minority representation from 19% to 32% at both the Vice President and above levels, and double the number of individuals who identify as Black/African American and Latino/Hispanic.  *Id.*  In support of its Opportunity Parity Goals, Pfizer is invested in attracting, developing, and retaining a highly talented, high-achieving, diverse pipeline of individuals to serve as the company's future leaders.

## II.     The Breakthrough Fellowship Program & Pfizer's Other Early Career Programs

The Fellowship is a highly competitive program and represents a nine-year commitment by Pfizer to 20 fellows participating in a cohort each year.  *Id*. ¶ 13.  The Fellowship recruits outstanding college students and supports them through their early years at Pfizer, including by funding their graduate education, to mentor and develop future company leaders.  *Id.* ¶¶ 14–16.

Pfizer has committed to sponsor 100 fellows over five years, in classes of 20 fellows per year.  *Id*. ¶ 13.  Pfizer has launched the first two cohorts—one in 2021 and one in 2022; these fellows are progressing through the Fellowship.  *Id.* ¶ 19.  Pfizer has not yet opened its application for the third class of fellows; recruitment will begin in January 2023.  *Id.* ¶ 25.

Students apply to the Fellowship during their junior year in college.  *Id*. ¶ 14.  The selected fellows join Pfizer for a summer internship before their senior year.  *Id.*  Interns who successfully complete the internship return in a full-time, entry-level analyst role for two years after earning their bachelor's degree.  *Id.*  After two years, fellows leave the company to complete a Master's in Business Administration ("MBA"), Master's in Public Health ("MPH"), or Master of Science ("MS") in Statistics that is paid for by Pfizer.  *Id.* ¶ 15.  Fellows return to Pfizer for a summer

internship between the first and second years of their graduate program.  *Id.* ¶ 16.  After earning their graduate degree, fellows re-join Pfizer in a manager-level position.  *Id.*

Thoughtful selection of the fellows is paramount.  The first two cohorts are comprised of high-achieving and outstanding fellows, who demonstrated leadership and commitment to community engagement.  *Id.* ¶ 22.  Selection for the Fellowship is fiercely competitive: Pfizer received thousands of applications for the 40 spots in the initial two cohorts.  *Id.* ¶ 20.  The 40 fellows exemplified Pfizer's four core values of courage, excellence, equity, and joy.  *Id.* ¶ 22.  Each fellow was rated "top tier" in interviews.  *Id.*  Their accomplishments are numerous and impressive.  They have founded programs focused on breaking down barriers, mentored community members, and pursued groundbreaking STEM research.  *Id.* ¶ 23.  Many have led biomedical research, community health clinics, and vaccination campaigns.  *Id.*  Many were at the top of their respective college classes and have been selected for prestigious scholarships at top universities.  *Id.*

These fellows well exceed Pfizer's minimum selection criteria, which are that applicants must: be U.S. citizens or permanent residents; be enrolled in a full-time university program graduating the following year; show interest and intent to pursue an MBA, MPH or MS in Statistics; have a 3.0 GPA or higher; and be willing to work in New York City. *Id.* ¶ 18.  Applicants must also demonstrate exceptional leadership potential and meet the program's goals of increasing the pipeline for Black/African American, Latino/Hispanic, and Native American leaders.

The Fellowship is one of Pfizer's several early career programs.  Pfizer offers numerous paid internship and early career programs for college students, MBA candidates, medical students, and doctoral candidates.  *Id.* ¶ 28.  People of all backgrounds are encouraged to apply to these programs, which are highly attractive for the benefits they offer to early-career individuals.  *Id.*

¶ 29.  Each program welcomes new colleagues to the Pfizer community while offering many benefits.  For example, students in the MBA Summer Associate program are provided formal and informal mentoring with Pfizer colleagues at all levels and are eligible for full-time positions upon graduation in which they initially rotate between business units in four to six month increments for two years.  *Id.* ¶ 31.  All benefits-eligible Pfizer employees also may receive educational assistance, up to $10,000 per year, for educational courses or degree programs.  *Id.* ¶ 33.

### III.    Pfizer's Business and Its Relationship with the Federal Government

Pfizer is engaged in the research, development, marketing, sale and distribution of biopharmaceutical products.  Gramling Decl. ¶ 3.  It does not provide any medical treatment or administer health care.  *Id.* ¶ 4.  Pfizer further does not receive funding from the federal government to operate its business as a whole, nor does it receive federal funding to operate the Fellowship.[1] *Id.* ¶ 5; Bruce Decl. ¶ 17.  Pfizer also does not receive any federal funding from Medicare or Medicaid.  Gramling Decl. ¶ 10.  Medicare and Medicaid reimbursements for Pfizer's prescription drugs and vaccines are not paid to Pfizer. *Id.*

### IV.    This Litigation

Plaintiff Do No Harm is a non-profit organization founded six months ago.  Its  self-proclaimed mission is to prevent the "radical ideology of 'anti-racism'" from "endangering the health of everyone."[2]  Plaintiff asserts fifteen claims under federal, state, and local law: Section 1981 of the Civil Rights Act of 1866 ("§ 1981") (Count I); Title VI of the Civil Rights Act ("Title VI") (Count II); Section 1557 of the Affordable Care Act ("§ 1557") (Count III); and claims

---

[1]    Plaintiff's Complaint points to public-private partnerships Pfizer has with the federal government aimed to advance research and development for new diagnostics and treatments.  ECF 1 ("Compl.") ¶¶ 21–30.  The Accelerating Medical Partnerships Program ("AMP") is one such public-private partnership, as is the collaboration between Pfizer's Centers for Therapeutic Innovation with the National Institutes of Health between 2014 and 2019.  *Id.* ¶ 21; Declaration of Martha Goodman ("Goodman Decl.") Exs. A and C.

[2]    Do No Harm, *About Us*, https://donoharmmedicine.org/about/.

under the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL"), which prohibit racial discrimination with respect to employment, internships, and training programs (Counts IV–IX) and advertising of the same (Counts X–XV).   Plaintiff purports to bring claims as a representative of two unidentified members, Member A and Member B ("the Members"), who assert that they are white and Asian, respectively.   Each has submitted an unsworn, anonymous declaration stating that they are qualified for the Fellowship and that they would apply if not for the Fellowship's racial criterion.  ECF No. 5-2, 5-3.

## ARGUMENT

A preliminary injunction is "an extraordinary and drastic remedy."  *Mazurek* v. *Armstrong*, 520 U.S. 968, 972 (1997) (per curiam); *see Hanson Trust PLC* v. *SCM Corp.*, 774 F.2d 47, 60 (2d Cir. 1985) ("[A] preliminary injunction, which is one of the most drastic tools in the arsenal of judicial remedies . . . must be used with great care.").[3]  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter* v. *Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Capstone Logistics Holdings, Inc.* v. *Navarrete*, 736 F. App'x 25, 26 (2d Cir. 2018).

Where, as here, the movant seeks a preliminary injunction that "will alter, rather than maintain, the status quo," or "provide the movant with substantially all the relief sought," it must meet a particularly exacting and "higher standard"; it must demonstrate "a clear or substantial likelihood of success on the merits," in addition to satisfying the remaining factors.  *Tom Doherty Assocs., Inc.* v. *Saban Ent., Inc.*, 60 F.3d 27, 33–34 (2d Cir. 1995).

## I.      Plaintiff Cannot Demonstrate a Clear Likelihood of Success on the Merits.

---

[3]    With respect to quoted material, unless otherwise indicated, all brackets, ellipses, footnote call numbers, internal quotations, and citations have been omitted for readability. All emphasis is added unless otherwise indicated.

### A.      Plaintiff Lacks Article III Standing.

Plaintiff cannot demonstrate a clear likelihood of success on the merits because it fails to demonstrate, as the party invoking the Court's jurisdiction, that it has Article III standing for each claim asserted. *See Davis* v. *Fed. Election Comm'n*, 554 U.S. 724, 734 (2008).[4]

Plaintiff does not allege any injury to the organization itself; Plaintiff proceeds with a claim of associational standing. Thus, Plaintiff must demonstrate that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect [in litigation] are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt* v. *Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977); *Disability Advocates, Inc.* v. *N.Y. Coal. for Quality Assisted Living, Inc.*, 675 F.3d 149, 157 (2d Cir. 2014). Plaintiff lacks standing because Members A and B do not have standing in their own right and because their participation is required in this suit.[5]

### 1.      Members A and B Do Not Have Standing.

Members A and B must have "suffered an injury-in-fact" that is concrete, particularized, and "actual or imminent, not conjectural or hypothetical." *Faculty* v. *New York Univ.*, 11 F.4th 68, 75 (2d Cir. 2021). There must also be "a causal connection between the injury and the conduct complained of," and it must be "likely, as opposed to merely speculative," that a favorable decision will redress the injury. *Id.* On a preliminary injunction, "a plaintiff cannot rest on mere allegations;" it "must set forth by affidavit or other evidence specific facts" demonstrating standing. *New York* v. *U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 59 (2d Cir. 2020).

---

[4]     Pfizer's arguments that Plaintiff lacks standing to bring certain specific claims are addressed below in the sections explaining why Plaintiff fails to show a clear likelihood of success on the merits on those claims.

[5]     Pfizer reserves its rights to challenge (i) whether the interests Plaintiff purportedly seeks to address in this litigation are germane to its organizational purpose, and (ii) whether Plaintiff's constituents bear the indicia of membership required for associational standing. *See Hunt*, 432 U.S. at 345.

#### (a)        The Declarations Do Not Demonstrate the Members' Standing.

The declarations fall well short of "affirmatively" demonstrating standing to sue.  *Faculty*, 11 F.4th at 76.  Members A and B state they are "junior[s] at . . . Ivy League universit[ies]," with "GPA[s] higher than a 3.0," "hold leadership positions in student organizations," and "meet all the [Fellowship's] eligibility requirements," without providing any further detail.  ECF Nos. 5-2, 5-3.  The declarations include no facts showing the Members have "demonstrated exceptional leadership qualities and commitment to community engagement"—the key criteria qualifying applicants for the Fellowship.  Bruce Decl. ¶¶ 18, 22.  Nor do the declarations contain any facts suggesting that, but for their race, the Members are otherwise among those who would be viable candidates for the highly competitive Fellowship, or that they have taken any specific steps demonstrating they are ready and able to apply.  *Id.* ¶¶ 22–23; *TransUnion LLC* v. *Ramirez*, 141 S. Ct. 2190, 2210 (2021) (person has standing to seek "injunctive relief to prevent the [alleged] harm from occurring, . . . so long as the risk of harm is sufficiently imminent and substantial"); *Clapper* v. *Amnesty Int'l USA,* 568 U.S. 398, 409 (2013) (standing requires a showing that "injury is *certainly* impending" (emphasis in original)).

*Faculty* v. *Harvard Law Review Association*, 2019 WL 3754023 (D. Mass. Aug. 8, 2019) is analogous.  There, the organizational plaintiffs challenged the Harvard Law Review's use of race and sex criteria in the selection of (i) members for the Law Review and (ii) authors' articles for publication.  *Id.* at *1–2.  Noting that the complaint lacked "descriptive information beyond . . . threadbare recitals," the court dismissed the action for lack of standing, holding that the organizations did not plead facts showing their members' ability to compete for membership on the Law Review.  *Id.* at *6.  So too here; the Members' declarations fail to show injury in fact, causation, or redressability because they include no particularized facts showing that the Members possess the requisite qualifications—such as demonstrated leadership potential or demonstrated

interest and intent to pursue an MBA, MPH, or MS in Statistics—to compete for a Fellowship spot.  *See* Bruce Decl. ¶¶ 18; *Carroll* v. *Nakatani*, 342 F.3d 934, 942–43 (9th Cir. 2003) (no standing where plaintiff failed to demonstrate that he was in a position to compete equally with other loan applicants by submitting evidence of endeavors "that might bolster his bona fides").

The *Harvard Law Review* court also dismissed the complaint for lack of standing because it contained no allegations demonstrating that member-authors were "preparing to submit an article in the reasonably foreseeable future (suggesting imminent harm)."  2019 WL 3754023, at *7. Here, the Members' declarations state they are "ready and able" to apply to the Fellowship, but offer no particularized facts demonstrating this.  The Members' conclusory statements are insufficient to demonstrate the imminent injury required for a preliminary injunction.  *See Correll* v. *Amazon.com, Inc.*, 2022 WL 5264496, at *1, *3 (S.D. Cal. Oct. 6, 2022) (no standing to challenge incentive program for minority certified sellers where plaintiff merely pleaded he visited Amazon's website wanting to sell products thereon); *see also Faculty*, 11 F.4th at 76–78 (similar).

### (b)        Anonymous, Unsworn Declarations Are Insufficient.

The declarations are also deficient because they are anonymous and unsworn. Organizational plaintiffs must identify a member with standing.  *Summers* v. *Earth Island Inst.*, 555 U.S. 488, 498–99 (2009).  Courts in this District and Circuit require members to be identified "by name," which Plaintiff does not do.  *Equal Vote Am. Corp.* v. *Congress*, 397 F. Supp. 3d 503, 509 (S.D.N.Y. 2019); *see Residents & Families United to Save Our Adult Homes* v. *Zucker*, 2018 WL 1175152, at *6 (E.D.N.Y. Mar. 6, 2018) (no standing because plaintiff did not "name the members . . . who were injured"). "[N]aming the affected members" may be excused "only" if "*all* the members of the organization are affected by the challenged activity."  *Summers*, 555 U.S. at 498–99.  That is not this case.  Not "all" of Plaintiff's members seek to apply to the Fellowship. *See* Compl. ¶ 9; *Summers*, 555 U.S. at 498.

Furthermore, the unsigned, unsworn declarations submitted do not satisfy 28 U.S.C. § 1746.  "Without any record whatsoever of [the member]'s identity or their signature, a declarant cannot be held to their statements under 'penalty of perjury.'"  *Doe* v. *L.A. Unified Sch. Dist.*, 2017 WL 797152, at *9 (C.D. Cal. Feb. 27, 2017); *see McGehee* v. *Neb. Dep't of Corr. Servs.*, 2019 WL 266423, at *5–6 (D. Neb. Jan. 17, 2019) (absence of any record as to a declarant's identity or signature fails to satisfy § 1746).  Accordingly, the declarations must be disregarded.

### 2.      Participation by Members A and B is Required.

The third *Hunt* prong "guard[s] against the hazard of litigating a case . . . only to find the plaintiff lacking detailed records or the evidence necessary to show the harm with sufficient specificity."  *United Food & Com. Workers Union Loc. 751* v. *Brown Grp., Inc*., 517 U.S. 544, 556 (1996).  As such, where "a fact-intensive-individual inquiry" is required, "conferring associational standing is improper."  *Free Speech Coal., Inc.* v. *Attorney Gen. United States*, 974 F.3d 408, 421 (3d Cir. 2020).  Plaintiff cannot show that Member A or Member B suffered the requisite injury to confer standing—that is, that either could compete for a Fellowship spot but for their race—without specific facts demonstrating Member A's and Member B's credentials enabling them to realistically compete for the highly competitive Fellowship.  Because the Members' participation would be necessary for Plaintiff to establish those predicate facts for standing and for Pfizer to challenge Plaintiff's evidence, Plaintiff lacks standing.

### B.      Plaintiff Is Not Likely to Succeed on Its Section 1981 Claim.

Section 1981 prohibits discrimination on the basis of race in the making and enforcement of contractual relationships, including employment contracts.  *Patterson* v. *County of Oneida*, 375 F.3d 206, 224 (2d Cir. 2004).  To make out a § 1981 claim, a plaintiff must demonstrate "(1) that she is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) that the discrimination concerned one or more of the activities enumerated in

§ 1981." *Lauture* v. *IBM Corp.*, 216 F.3d 258, 261 (2d Cir. 2000).  A plaintiff must also establish the defendant's allegedly discriminatory conduct was the but-for cause of the alleged injury. *Comcast Corp.* v. *Nat'l Ass'n of African Am.-Owned Media & Ent. Studios Network, Inc.*, 140 S. Ct. 1009, 1019 (2020).  Plaintiff alleges that Pfizer violated § 1981 by "expressly excluding white and Asian-American applicants from the Fellowship"—which "is designed to lead to a contractual relationship between Pfizer and the fellows"—"solely based on race."  Compl. ¶¶ 76, 78.  Plaintiff lacks standing to bring this claim and fails to show a clear likelihood of success on the merits.

### 1.    Plaintiff Lacks Standing to Bring a Section 1981 Claim.

As an organization, Plaintiff lacks standing to bring a § 1981 claim.  In *Aguayo* v. *Richardson*, the Second Circuit held that an organization lacked associational standing to sue under § 1983 on behalf of its members, explaining that nothing in the language or legislative history "suggests that an organization may sue under the Civil Rights Act for the violation of rights of members."  473 F.2d 1090, 1099 (2d Cir. 1973).  The Second Circuit has repeatedly recognized that organizations do "not have standing to assert the rights of [their] members" under § 1983 because the rights secured are "personal to those purportedly injured."  *Nnebe* v. *Daus*, 644 F.3d 147, 156 (2d Cir. 2011); *N.Y.S. Citizens' Coal. For Children* v. *Velez*, 629 F. App'x 92, 93–94 (2d Cir. 2015).  Like § 1983, § 1981 was enacted as part of the Civil Rights Act of 1866, and its statutory language, providing that "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts," similarly demonstrates that the rights secured under § 1981 are personal in nature, 42 U.S.C. § 1981(a). Therefore, Plaintiff cannot secure the rights of its members on the basis of associational standing.[6]

---

[6]   This argument extends to all civil rights claims, including Plaintiff's NYSHRL and NYCHRL claims.  *Cf. Goldman* v. *MCL Cos. of Chi., Inc.*, 131 F. Supp. 2d 425, 427 (S.D.N.Y. 2000) (recognizing that anti-discrimination statutes "create personal rights").

11

Nor can Plaintiff itself bring a cognizable § 1981 claim.   The Supreme Court has recognized that parties injured under § 1981 "usually will be the best proponents of their own rights," and "if and when the holders of those rights . . . do not wish to assert them, third parties are not normally entitled to step into their shoes." *Domino's Pizza, Inc.* v. *McDonald*, 546 U.S. 470, 479 (2006).  As such, "a plaintiff cannot state a claim under § 1981 unless [it] has (or would have) rights under the existing (or proposed) contract that [it] wishes to make and enforce." *Id.* at 479–80.  In other words, "only a party with rights under a contract [or a prospective contract] may bring a Section 1981 claim in connection with that contract." *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds* v. *Tightseal Constr. Inc.*, 2018 WL 3910827, at *5 (S.D.N.Y. Aug. 14, 2018).  Because Plaintiff thus cannot assert a § 1981 claim on a member's behalf, and because Plaintiff itself does not (and cannot) claim rights under any alleged prospective contractual relationship with Pfizer, Plaintiff has no standing to bring a § 1981 claim.

### 2. Pfizer Has a Legitimate, Non-Discriminatory Reason for Its Race-Conscious Fellowship Criterion.

"[T]he second element of a § 1981 claim"—intent to discriminate based on race—is "subject to the same burden-shifting analysis as intentional discrimination claims brought under Title VII." *Broich* v. *Incorporated Village of Southampton*, 462 F. App'x 39, 42 (2d Cir. 2012). In that analysis, a plaintiff must first satisfy a "minimal" burden to establish a prima facie case of discrimination. *Id.* at 43.  If a plaintiff does so, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the complained-of conduct. *Id.* at 42.  Where the defendant does so, the burden shifts back to the plaintiff to prove that the proffered reason is pretext for discrimination. *Id.* at 43.  Throughout this analysis, the burden of persuasion remains with the plaintiff. *Johnson* v. *Transp. Agency, Santa Clara Cnty.*, 480 U.S. 616, 627 (1987); *Shea* v. *Kerry*, 961 F. Supp. 2d 17, 33–34 (D.D.C. 2013); *Patrolmen's Benev. Ass'n of City of N.Y., Inc.*

v. *City of New York*, 74 F. Supp. 2d 321, 333 (S.D.N.Y. 1999).

As an initiative to promote diversity and address the deficit in underrepresented minority groups within Pfizer's leadership ranks, the Fellowship provides a legitimate, non-discriminatory basis for the use of racial selection criterion. *See Johnson*, 480 U.S. at 627; *Shehab* v. *Chas. H. Sells, Inc.*, 2006 WL 938715, at *4 (S.D.N.Y. Mar. 29, 2006). The Supreme Court has long articulated why this is so. A plan like the Fellowship plays "a crucial role" in "eliminating the effects of discrimination in the workplace" and federal law "should not be read to thwart such efforts." *Johnson*, 480 U.S. at 630. The benefits of diversity "are not theoretical but real, as major American businesses have made clear that the skills needed in today's increasingly global marketplace can only be developed through exposure to widely diverse people, cultures, ideas, and viewpoints." *Grutter* v. *Bollinger*, 539 U.S. 306, 330 (2003). Congress also has declared that "the opportunity for full participation in our free enterprise system by socially and economically disadvantaged persons is essential if we are to obtain social and economic equality," 15 U.S.C. § 631(f)(1)(A), and, as such, it is "in the national interest to expeditiously ameliorate the conditions of socially and economically disadvantaged groups," *id.* § 631(f)(1)(D), including "Black Americans, Hispanic Americans, [and] Native Americans." *Id.* § 631(f)(1)(C); *see also* 29 C.F.R. § 1608.1(b)-(c) (EEOC rule noting Congress has "strongly encouraged employers" to voluntarily adopt practices "to improve opportunities for minorities").

Thus, the Fellowship does what Congress has encouraged and controlling law allows. By selecting fellows who meet the Fellowship's goal of increasing the pipeline for minority leaders, Pfizer is working toward achieving its Opportunity Parity Goals, building a workforce that represents the diversity of the communities Pfizer serves, and contributing to the amelioration of the effects of historical discrimination in the workplace.

3.      **Plaintiff Cannot Show Pretext.**

In the affirmative action context, a plaintiff must show pretext by presenting sufficient, potentially admissible evidence that the affirmative action plan is invalid, either because it (1) is not justified by a "manifest racial imbalance" in traditionally segregated job categories; or (2) unnecessarily trammels the rights of non-minorities or creates an absolute bar to their advancement.  *United Steelworkers of America* v. *Weber*, 443 U.S. 193, 208 (1979); *see Johnson*, 480 U.S. at 626–27 (burden of proving an affirmative action plan's "invalidity remains on the plaintiff").  In assessing these considerations, deference must be accorded to "the judgment and expertise of the relevant decisionmakers"—here, decisionmakers at Pfizer.  *Doe* v. *Kamehameha Schs.*, 470 F.3d 827, 841 (9th Cir. 2006) (en banc) (collecting cases).[7]  Plaintiff cannot satisfy either test.

(a)      **Plaintiff Cannot Show Pretext through the Absence of Manifest Imbalance.**

The Fellowship's race-based criterion is justified given the particular underrepresentation in Pfizer's workforce, which, as the Supreme Court has made clear, justifies a race-conscious affirmative action plan.  *See Johnson*, 480 U.S. at 631–32.  Where, as here, there is "a showing of statistical disparities between the racial makeup of the employer's workforce" and "those in the labor force who possess the relevant qualifications" in a traditionally segregated job category, and the program at issue is designed to address that disparity, the "manifest imbalance" criterion is satisfied.  *Shea* v. *Kerry*, 796 F.3d 42, 57, 59 (D.C. Cir. 2015); *see Kamehameha*, 470 F.3d at 843–

---

[7]    Plaintiff appears to contend that the burden-shifting framework does not apply because the Fellowship is purportedly discriminatory on its face.  *See* ECF No. 5-8 at 9, 17.  But none of Plaintiff's cases involve an affirmative action program aimed to reach parity, so the cases are inapposite.  *Juarez* v. *Nw. Mut. Life Ins. Co.*, 69 F. Supp. 3d 364, 365–66, 370 (S.D.N.Y. 2014) (blanket ban against hiring non-U.S. citizens or green card holders); *Patrolmen's Benev. Ass'n of City of N.Y., Inc.* v. *City of New York*, 74 F. Supp. 2d 321, 324, 333, 338 (S.D.N.Y. 1999) (defendant involuntarily transferred Black and Black/Hispanic police officers because of their race); *UAW* v. *Johnson Controls, Inc.*, 499 U.S. 187, 199 (1991) (ban on all women, except those whose infertility was medically documented, from jobs involving lead exposure).

44.   *Compare* Bruce Decl. ¶ 7 (Pfizer racial makeup), *with id*. ¶ 10 (labor force racial makeup).

When internal promotion is at issue, the relevant comparison can be to those within the company

who possess the requisite qualifications. *In re Birmingham Reverse Discrimination Emp. Litig.*, 20

F.3d 1525, 1537 (11th Cir. 1994).

At more senior levels, Pfizer relies substantially on internal promotion.  Bruce Decl. ¶ 6.

The racial makeup of Pfizer's workforce demonstrates that, while Pfizer provides the same avenue

for promotion for all employees regardless of race, there exists an imbalance in the advancement

of Black/African American, Latino/Hispanic, and Native American colleagues as compared to

white and Asian colleagues.  *Id.* ¶¶ 6–8; *see Shea*, 796 F.3d at 60.

### (b)   The Fellowship Does Not Unnecessarily Trammel the Rights of Non-Minorities or Bar Their Advancement.

By design, the Fellowship creates opportunities for historically underrepresented groups.

But, the Fellowship does not unnecessarily trammel the interests of white or Asian American

employees, or create an absolute bar to their advancement, and Plaintiff has failed to make a clear

showing that it will prove otherwise.  In *Weber* and *Johnson*, the Court considered whether the

plans required or led to the discharge of non-beneficiaries and replaced them with beneficiaries.

*Weber*, 443 U.S. at 208; *Johnson*, 480 U.S. at 630.  The Court also considered whether the plans

led to non-beneficiaries being closed off from avenues of entry to the companies and whether the

advancement of non-beneficiaries already employed by the companies were stagnated due to their

race.  *Weber*, 443 U.S. at 208; *Johnson*, 480 U.S. at 630.  None of these concerns exist here.

Pfizer has numerous paid internship programs for college and graduate students, and early

career programs open to applicants of all backgrounds.  Bruce Decl. ¶¶ 28–31.  All benefits-

eligible Pfizer colleagues can obtain reimbursement for continuing education or degree programs.

*Id.* ¶ 31.  No white or Asian American person has lost their job or a promotion because of the

Fellowship. *Id.* ¶ 34; *see In re Birmingham*, 20 F.3d at 1541–42 ("entry-level hiring goals" which do not result in race-based layoffs are valid); *Valentine* v. *Smith*, 654 F.2d 503, 511 (8th Cir. 1981) (affirmative action plan did not trammel rights of non-beneficiaries because plan did not "require firing any employees to make room for minority applicants", "deprive innocent persons of employment rights or benefits they already enjoyed," or "completely bar" non-minorities from employment). Where, as here, those impacted by an affirmative action program have alternative opportunities, the program is valid. *See Kamehameha*, 470 F.3d at 844–45.

### 4. Plaintiff Cannot Demonstrate But-For Causation.

To succeed on a § 1981 claim, a plaintiff must also show that the alleged racially discriminatory conduct was the but-for cause of the alleged injury, as opposed to showing that race was a "motivating factor" in the contracting decision. *Comcast*, 140 S. Ct. at 1019; *Sidibe* v. *MEI-GSR Holdings LLC*, 2020 WL 1516807, at *3 (D. Nev. Mar. 27, 2020) (plaintiff must establish but-for causation at the preliminary-injunction stage). As previously explained, *supra* p. 8–9, Plaintiff has failed to adduce sufficient facts to plausibly show that but for their race (and not the absence of exceptional qualities such as demonstrated leadership potential), Members A and B would be able to compete for the approximately twenty fellowship spots in the 2023 cohort.

### C. Plaintiff Is Unlikely to Succeed on Its Title VI and Section 1557 Claims.

Pfizer is not subject to Title VI or § 1557. Title VI and § 1557 (which incorporates Title VI) prohibit race discrimination under "any program or activity" or "any health program or activity" receiving "Federal financial assistance," respectively.[8] The statutes' anti-discrimination provisions may be triggered in the following circumstances: (1) with respect to a company's entire operations if (a) it is principally engaged in the business of providing healthcare under Title VI or

---

[8]    Section 1557 incorporates "the protected grounds of discrimination" under Title VI. *Weinreb* v. *Xerox Bus. Servs., LLC Health & Welfare Plan*, 323 F. Supp. 3d 501, 520 (S.D.N.Y. 2018).

§ 1557 or (b) receives federal financial assistance "as a whole"; or (2) if the Fellowship itself receives federal financial assistance.  None is applicable here.

1. **Pfizer Is Not a Healthcare Provider and Does Not Receive Federal Assistance as a Whole.**

Title VI's anti-discrimination provision reaches only a "program or activity receiving Federal financial assistance," 42 U.S.C. § 2000d.  Unless an entity receives federal assistance "as a whole" or is "principally engaged in the business of providing . . . health care," Title VI applies only to the program or activity "*to which Federal assistance is extended*," and not to the entire entity.  *Id.* § 2000d–4a(3)(A)–(B).  Similarly, § 1557 applies only to "any health program or activity, any part of which is receiving Federal financial assistance," *id*. § 18116, and only to such extent, 45 C.F.R. § 92.3(b) (§ 1557 applies "*only to the extent* any such operation receives Federal financial assistance," unless the entity is "principally engaged in the business of providing healthcare").  The term "principally engaged" means "the primary activities of a business, excluding only incidental activities."  *Collins* v. *Giving Back Fund*, 2019 WL 3564578, at *10 (S.D.N.Y. Aug. 6, 2019).

*First*, Pfizer is not a healthcare provider.  A healthcare "provider" is defined to include hospitals, nursing facilities, or rehabilitation facilities, *not* biopharmaceutical companies such as Pfizer.[9]  The relevant case law is consistent; to be a healthcare provider under Title VI or § 1557, an entity must "offer some form of treatment or direct assistance to individuals."  *Drachman* v.

---

[9]    *E.g.*, 42 C.F.R. § 400.202 (2012) (Medicare) (defining "provider" as a hospital, critical access hospital, skilled nursing facility, comprehensive outpatient rehabilitation facility, home health agency or hospice that has in effect an agreement to participate in Medicare, among others); 29 C.F.R. § 825.125(a)(1)-(2) (2016) (FMLA) (defining "health care provider" as "a doctor of medicine or osteopathy who is authorized to practice medicine or surgery" or "any other person determined by the Secretary to be capable of providing health care services"); 42 U.S.C. § 1395x(u) (Medicare provider enrollment definitions) ("The term 'provider of services' means a hospital, critical access hospital, rural emergency hospital, skilled nursing facility, comprehensive outpatient rehabilitation facility, home health agency, [or] hospice program."); Provider, Stedman's Medical Dictionary 732090 (Nov. 2014) (defining "provider" as a "term used by managed care organizations, referring to anyone rendering medical care, including physicians, nurse practitioners, physician assistants, and others").

*Bos. Sci. Corp.*, 258 F. Supp. 3d 207, 212 (D. Mass. 2017). [10] Just as "a global Fortune 500 medical device company" is not a healthcare provider," *id.*, neither is a biopharmaceutical research, development, and manufacturing company like Pfizer.  Gramling Decl. ¶ 3.  Pfizer does not provide any direct medical treatment or patient care.  *Id.* ¶ 4; *see Bernier* v. *Trump*, 242 F. Supp. 3d 31, 44 (D.D.C. 2017) (biopharmaceutical company is "in the business of manufacturing" Hepatitis C drugs, and is not a "health program or activity").

*Second*, Pfizer does not receive federal funding "as a whole."  The phrase "as a whole" means that "the recipient of federal funds received those funds as general assistance," rather than "for some specific purpose."  *Collins*, 2019 WL 3564578, at *11; *see Grove City Coll.* v. *Bell*, 465 U.S. 555, 571 (1984) (federal funding that is limited in purpose or "earmarked for" a specific program is not received as a whole); *Boswell* v. *SkyWest Airlines, Inc.*, 217 F. Supp. 2d 1212, 1216 (D. Utah 2002) (similar).  Pfizer does not receive any financial assistance from the federal government to operate its business as a whole.  Gramling Decl. ¶ 5.

Nor does Pfizer's participation in AMP or its collaboration with the NIH—as relied on by Plaintiff—constitute federal assistance extended to the company as a whole.  Compl. ¶¶ 22–30. Pfizer participates in some public-private partnerships with the federal government, Goodman Decl. Exs. A and C, but any monetary or non-monetary assistance that Pfizer receives from these public-private partnerships is program-specific and tied to discrete research areas, Gramling Decl. ¶¶ 6–10; *see* Goodman Decl. Ex. B; *Boswell*, 217 F. Supp. 2d 1212, 1217 (funding to airline for the specific purpose of "serving particular rural airports and . . . routes" is not received "as a whole").

---

[10]  "[T]he case law construing the Rehabilitation Act generally applies to" claims under Title VI and the ACA, "[g]iven the similar analytical framework applied to claims" under those statutes.  *Schmitt* v. *Kaiser Found. Health Plan of Wash.*, 965 F.3d 945, 954 (9th Cir. 2020).

Plaintiff incorrectly contends that "offering federally reimbursable products and medicines" through Medicare, Compl. ¶ 20, subjects Pfizer to Title VI and § 1557. Because Pfizer does not receive Medicare or Medicaid reimbursements, Gramling Decl. ¶ 10, it is not subject to either statute. *T.W.* v. *N.Y.S. Bd. of L. Examiners*, 996 F.3d 87, 94 (2d Cir. 2021) (entity that "never actually receive[d]" federal monies is not subject to Title VI or § 1557); *Abdus-Sabur* v. *Hope Vill., Inc*., 221 F. Supp. 3d 3, 9–11 (D.D.C. 2016) (private contractor that did not actually receive Medicare or Medicaid reimbursements is not a recipient of federal financial assistance). The case Plaintiff cites, *United States* v. *Nastasi*, 2002 WL 1267995 (E.D.N.Y. Apr. 17, 2002), is not applicable here because Pfizer does not receive Medicare or Medicaid reimbursements, and as such, Pfizer is not an "intended recipient" of such reimbursements. *Id*. at *3 ("recipients" of Medicare/Medicaid benefits are "the entities which receive payments from those programs").

### 2. The Fellowship is Not Subject to Program-Specific Coverage under Title VI or Section 1557.

Pfizer does not receive any federal assistance specifically for the Fellowship. Bruce Decl. ¶ 17.[11] Plaintiff does not, and cannot, allege otherwise. *See Ass'n Against Discrimination in Emp., Inc*. v. *City of Bridgeport*, 647 F.2d 256, 276 (2d Cir. 1981) (Title VI "in effect requires a logical nexus" between federal funding and purportedly discriminatory conduct); *Kelly* v. *Rice*, 375 F. Supp. 2d 203, 208–09 (S.D.N.Y. 2005) (failure to allege that defendant is receiving federal funds in connection with allegedly discriminatory program is "absolutely fatal" to Title VI claim).[12]

### D. Plaintiff Is Unlikely to Succeed on Its Discrimination and Advertising Claims

---

[11]  Plaintiff's Title VI claim also fails because Plaintiff does not show—because it cannot show—that Pfizer receives federal funds aimed primarily at providing employment. 42 U.S.C. § 2000d-3; *Bloomberg* v. *N.Y.C. Dep't of Educ*., 410 F. Supp. 3d 608, 625 (S.D.N.Y. 2019); *Ass'n Against Discrimination in Emp., Inc*. v. *City of Bridgeport*, 647 F.2d 256, 276 (2d Cir. 1981); *Johnson* v. *Cnty. of Nassau*, 411 F. Supp. 2d 171, 177 (E.D.N.Y. 2006).

[12]  Because Pfizer is not subject to Title VI or Section 1557, strict scrutiny does not apply. *Compare Soberal-Perez* v. *Heckler*, 717 F.2d 36, 41 (2d Cir. 1983) (not covered by Title VI, no strict scrutiny), *with Students for Fair Admissions, Inc.* v. *President & Fellows of Harvard Coll.*, 397 F. Supp. 3d 126, 189 (D. Mass. 2019) (opposite).

under NYSHRL and NYCHRL.

The NYSHRL and NYCHRL prohibit racial discrimination with respect to employment, internships, and training programs.   N.Y. Exec. Law §§ 296(1)(a); 296-c(2)(a); 296(1-a)(b); N.Y.C. Admin. Code §§ 8-107(1)(2); 8-107(2)(b); 8-107(23).   These laws also prohibit an employer from printing or circulating any statement or advertisement in connection with prospective employment, prospective internship, or training program, which directly or indirectly expresses any discrimination as to race.   N.Y. Exec. Law §§ 296(1)(d), 296-c(2)(c), 296(1-a)(d); N.Y.C. Admin. Code §§ 8-107(1)(d), 8-107(23), 8-107(2)(d).   Plaintiff's contention that the Fellowship and any announcements or advertisements about the Fellowship violate these provisions fails for multiple reasons.[13]

### 1.     Plaintiff Fails to Allege Any Purportedly Discriminatory Conduct Which Had an Impact in New York.

To prevail on these claims, a plaintiff "must plead and prove that the alleged discriminatory conduct had an impact within" the geographic boundaries of New York State (NYSHRL) or New York City (NYCHRL).  *Hoffman* v. *Parade Publ'ns*, 15 N.Y.3d 285, 289 (2010); *see Shiber* v. *Centerview Partners LLC*, 2022 WL 1173433, at *3 (S.D.N.Y. Apr. 20, 2022) (impact "needs to be felt by the plaintiff" within the relevant jurisdiction).   "Mere potential of being asked to work" within New York State or New York City "is plainly inadequate" to satisfy the geographic impact requirement.  *Amaya* v. *Ballyshear LLC*, 340 F. Supp. 3d 215, 223 (E.D.N.Y. 2018).

The Complaint does not include any allegation about where the Members reside or the

---

[13]   Because Plaintiff has failed to demonstrate a likelihood of success on the merits on any of its federal claims (and, such claims are likely to be dismissed), the court should find Plaintiff is unlikely to succeed on the merits of its state-law claims because it would decline to exercise supplemental jurisdiction over such claims.  *Cave* v. *E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."); *Bimber's Delwood, Inc.* v. *James*, 496 F. Supp. 3d 760, 788 (W.D.N.Y. 2020) (declining to exercise supplemental jurisdiction over state law claims "in the absence of a likelihood of success on any federal claims . . . in the context of a request for injunctive relief").

impact of the purported discriminatory act felt in New York.  While Members A and B state they would "benefit greatly from working in Pfizer's New York City office next summer," ECF Nos. 5-2 ¶ 7, 5-3 ¶ 7, "[p]leading impact in New York City by unspecified future career prospects" is simply insufficient.  *Kraiem* v. *JonesTrading Institutional Servs. LLC.*, 492 F. Supp. 3d 184, 199 (S.D.N.Y. 2020) ("If impact can be shown by a mere hope to work in New York down the line, the flood gates would be open.").

**2.      Plaintiff Fails to Demonstrate a Likelihood of Success on the Merits of Its State- and City-Law Employment Discrimination Claims.**

The elements of an employment discrimination claim under the state- and city- statutes are the same as under federal law.  *Kumaga* v. *N.Y.C. Sch. Const. Auth.*, 2010 WL 14444513, *10 (Sup. Ct. N.Y. Cnty. Apr. 2, 2010); *Adams* v. *City of New York*, 837 F. Supp. 2d 108, 128 (E.D.N.Y. 2011).  For the same reasons that Plaintiff's § 1981 claim fails, *supra* pp. 11–16, these claims do too.

**3.      Plaintiff Fails to Demonstrate a Likelihood of Success on the Merits of Its State- and City-Law Advertising Claims**

Plaintiff cannot succeed on its advertising claims because Members A and B, and therefore Plaintiff, lack standing.  Plaintiff alleges at most that its members viewed allegedly discriminatory advertising.  *See, e.g.*, Compl. ¶ 173.  But "a person who reads a discriminatory advertisement has standing to sue only if they allege some form of personal injury, including psychic injury or substantial insult or distress."  *McDermott* v. *N.Y. Metro LLC*, 664 F. Supp. 2d 294, 305 (S.D.N.Y. 2009).  "Without such an allegation, the plaintiff does not have 'such a personal stake in the outcome of the controversy as to warrant [the] invocation of federal-court jurisdiction.'"  *Id.* (quoting *Havens Realty Corp.* v. *Coleman*, 455 U.S. 363, 378–79 (1982)); *see Fair Hous. Council of Suburban Phila.* v. *Main Line Times*, 141 F.3d 439, 443–44 (3d Cir. 1998); *Wilson* v. *Glenwood Intermountain Props.*, 98 F.3d 590, 595–96 (10th Cir. 1996).  The declarations do not describe—

21

let alone with sufficient detail—any such injury.  *See* ECF Nos. 5-2, 5-3.

Plaintiff's advertising claims are unlikely to succeed for the additional reason that the announcements or advertisements concerning Pfizer's program do not constitute an expression of "limitation, specification or discrimination" as to race.  NYSHRL and NYCHRL make it unlawful "to print or circulate or cause to be printed or circulated any statement, advertisement or publication . . . in connection with prospective employment [internship, or training program], which expresses directly or indirectly, any limitation, specification or discrimination" as to race. N.Y. Exec. Law § 296(1)(d); N.Y.C. Admin. Code § 8-107(1)(d).  Although Plaintiff alleges that all posts and advertisements, including Pfizer's announcement that the Fellowship "requires that applicants be Black/African American, Latino/Hispanic, or Native American," express racial discrimination because they exclude white and Asian-American applicants, Compl. ¶¶ 4, 43–47, Plaintiff cites nothing in the materials about the Fellowship that categorically bans any applicant from applying.  Rather, Pfizer's announcement and FAQs about the Fellowship, Facebook post, video, and LinkedIn page all state that the Fellowship "works to advance students and early career colleagues of Black/African American, Latino/Hispanic and Native American descent."  ECF No. 5-8 at 20–21 (citing ECF No. 5-7 at 5–9).  These statements do not "express . . . discrimination." N.Y. Exec. Law § 296; N.Y.C. Admin. Code § 8-107; *see Weser* v. *Glen*, 190 F. Supp. 2d 384, 396, 398, 399 (E.D.N.Y. 2002) (admissions criteria seeking "students who are members of populations that have traditionally been underserved by the law and underrepresented by the profession" is "facially neutral" and  "does not classify persons on the basis of race"); *Barnhill* v. *City of Chi., Police Dep't*, 142 F. Supp. 2d 948, 965 (N.D. Ill. 2001) (program that is "at least on its face" open to candidates of all races is not discriminatory).  Because the Fellowship criterion does not "express discrimination," public-facing materials about the Fellowship cannot violate the

advertising provisions of the NYSHRL and NYCHRL, as it would make little sense to find a job program with race-based criteria lawful and materials about such program unlawful.

## II.     Plaintiff Cannot Demonstrate Irreparable Harm.

Irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Bell & Howell: Mamiya Co.* v. *Masel Supply Co. Corp.*, 719 F.2d 42, 45 (2d Cir. 1983).   To determine whether a plaintiff has shown irreparable harm, "the court must actually consider the injury the plaintiff will suffer if he or she loses on the preliminary injunction but ultimately prevails on the merits, paying particular attention to whether the remedies available at law, such as monetary damages, are inadequate to compensate for that injury." *Salinger* v. *Colting,* 607 F.3d 68, 80 (2d Cir. 2010).

Harm stemming from the alleged denial of equal treatment in the employment context, or inability to compete on an equal footing for employment, is not irreparable.  *United States* v. *N.Y.C. Bd. of Educ.*, 2002 WL 31663069, at *3 (E.D.N.Y. Nov. 26, 2002) ("courts are loathe to grant preliminary injunctions in employment cases in the absence of first amendment violations").   In *New York City Board of Education*, the court held that plaintiffs—white individuals—would not suffer irreparable harm where such plaintiffs challenged on equal protection grounds a settlement agreement that required the municipal defendants to provide retroactive seniority and permanent civil service status to certain racial minority employees.  *Id*. at *3.  In so holding, the court noted the lack of any cases standing for the proposition that an alleged equal protection violation in the employment context constitutes irreparable harm, and that this was not "the type of extraordinary case where employment related injuries are impossible to compensate."   *Id*. at *3–4.   Here, Plaintiff's alleged harm—being unable to compete for a spot in an internship, and early career educational and job program—could be remedied with money damages, and is not the type of

harm warranting a preliminary injunction.  *Id.*[14]  Plaintiff cites no authority to the contrary.[15]

Finally, Plaintiff's argument that Pfizer's "circulation of racially discriminatory advertising" constitutes irreparable harm fails because there is no presumption of irreparable injury for alleged civil rights violations in the Second Circuit, *Lincoln Cercpac* v. *Health & Hosps. Corp.*, 920 F. Supp. 488, 495–96 (S.D.N.Y. 1996) (collecting cases); *cf. We The Patriots USA, Inc.* v. *Hochul*, 17 F.4th 266, 294 (2d Cir. 2021) (merely alleging impairment of right insufficient to establish irreparable harm),[16] and also because Plaintiff's allegation that Pfizer's public-facing materials will "discourage" other Plaintiff members who are white or Asian from applying to the Fellowship is too speculative, *see Doe* v. *Rensselaer Polytechnic Inst.*, 2019 WL 181280 at *4, *8 (N.D.N.Y. Jan. 11, 2019) (no irreparable harm absent evidence to support non-speculative harm).

## III.   The Balance of the Equities Tips Decidedly in Pfizer's Favor.

A preliminary injunction that would bar Pfizer from selecting the 2023 class until further

---

[14]   *See Moses* v. *Comcast Cable Commc'ns Mgmt., LLC*, 2022 WL 2046345, at *4 (S.D. Ind. June 7, 2022) (denying white business owners' preliminary injunction request because failure to qualify for a minority-focused grant program is not irreparable); *Freeman* v. *Rochester Psychiatric Ctr.*, 2015 WL 4250892, at *2 (W.D.N.Y. July 10, 2015) (irreparable harm limited to situations where "loss of employment extends beyond financial boundaries [and] cannot be adequately remedied by a later award of damages"); *Pinckney* v. *Bd. of Educ. of Westbury Union Free Sch. Dist.*, 920 F. Supp. 393, 400 (E.D.N.Y. 1996) (denying preliminary injunction where movant could be made whole with damages); *Hum. Res. Mgmt., Inc.* v. *Weaver*, 442 F. Supp. 241, 249 (D.D.C. 1977) (denying preliminary injunction request in part because "possibility" of loss of rights is insufficient).

[15]   Plaintiff's cases outside of the employment and preliminary injunction contexts are inapposite.  *See Adarand Constructors, Inc.* v. *Pena*, 515 U.S. 200, 211 (1995) (summary judgment case involving federal government in constitutional action brought by subcontractor); *Parents Involved in Cmty. Sch.* v. *Seattle Sch. Dist. No. 1*, 551 U.S. 701, 709–11 (2007) (merits decision reversing lower courts' rulings upholding school districts' race-based student assignment plans); *Coal. for Equity & Excellence in Maryland Higher Educ.* v. *Maryland Higher Educ. Comm'n*, 295 F. Supp. 3d 540, 547 (D. Md. 2017) (addressing Title VI and equal protection claims against public higher education program following bench trial and remedies hearing). Though a preliminary injunction case, *Hispanic National Law Enforcement Association NCR* is distinguishable because the finding of irreparable harm was based on "the likely denial of a constitutional right" and potential injury that cannot be remedied with monetary relief.  2021 WL 1575772, at *23 (D. Md. Apr. 21, 2021).  Plaintiff's cases asserting constitutional violations against government actors do not bear on statutory claims against a private employer.

[16]   Plaintiff relies on non-binding, out-of-circuit cases providing that there is a presumption of irreparable harm from "the fact of the defendant's violation" of a civil rights statute to argue that such a presumption is applicable here.  *See* ECF No. 5-8 at 22.  But Defendant is aware of no case within the Second Circuit that stands for the same proposition.  Moreover, here, Pfizer has not violated any civil rights statute, as discussed above.

order of the Court and require Pfizer to select the 2023 class according to different criteria, as Plaintiff seeks, would cause considerable hardship to Pfizer.  Such an injunction would impede Pfizer's ability to meet its Opportunity Parity Goals and interfere with Pfizer's ability to recruit diverse talent.  *See* Bruce Decl. ¶¶ 11–12.  Granting the extraordinary relief sought also would require Pfizer to divert resources to change the Fellowship rules, expand the program, and reformulate its marketing and advertising campaigns, and could very well impede Pfizer's ability to select a 2023 class at all.  *Id.* ¶¶ 25–27.  Moreover, because Plaintiff seeks a preliminary injunction that would give it "all of the relief requested, even temporarily," the equities further tip in favor of Pfizer because of the disproportionate burden an injunction would impose, which "could not be adequately compensated should defendant prevail at trial."  11A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2948.2 (3d ed. Apr. 2022).

## IV.   The Public Interest Favors Upholding The Fellowship's Race-Conscious Criterion.

There exists a "strong public policy in favor of voluntary affirmative action plans."  *In re Birmingham Reverse Discrimination Emp. Litig.*, 833 F.2d 1492, 1498 (11th Cir. 1987); *see Martin* v. *Wilks*, 490 U.S. 755 (1989); *cf. Weber*, 443 U.S. at 209 (recognizing importance of "affirmative action plans designed to eliminate conspicuous racial imbalance").  Plaintiff does not meaningfully dispute this point, and instead ignores decades of well-settled precedent upholding employers' reliance on affirmative action programs.  At a minimum, the public interest favors preserving the status quo, which would permit Pfizer to continue operating the Fellowship as it has for over two years.  *See Benisek* v. *Lamone*, 138 S. Ct. 1942, 1945 (2018); *Tom Doherty*, 60 F.3d at 34 (a preliminary injunction "generally seeks only to maintain the status quo pending a trial on the merits").  The public interest therefore strongly counsels against an injunction.

## CONCLUSION

For the reasons set forth above, Plaintiff's preliminary injunction motion should be denied.

Dated: October 25, 2022
      New York, New York

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

By: /s/ Jeannie S. Rhee
Loretta E. Lynch
Liza M. Velazquez
1285 Avenue of the Americas
New York, NY  10019-6064
Phone:  (212) 373-3000
Fax:  (212) 757-3990
lelynch@paulweiss.com
lvelazquez@paulweiss.com

Jeannie S. Rhee
Martha L. Goodman
2001 K Street, NW
Washington, DC 20006-1047
Phone:  (202) 223-7466
Fax:  (202) 220-5012
jrhee@paulweiss.com
mgoodman@paulweiss.com

*Attorneys for Pfizer Inc.*