USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Jan 10 2025

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2023

(Argued:  October 3, 2023     Decided:  January 10, 2025)

Docket No. 23-15

DO NO HARM,

*Plaintiff-Appellant,*

−v.−

PFIZER INC.,

*Defendant-Appellee.*

Before:     JACOBS, WESLEY, and ROBINSON, *Circuit Judges.*

Plaintiff-Appellant Do No Harm challenges a December 16, 2022 order of the United States District Court for the Southern District of New York (Rochon, *J.*) *sua sponte* dismissing the case without prejudice on the ground that Do No Harm lacked Article III standing.  We previously affirmed the district court's decision in a published opinion.  On petition for rehearing, we withdraw that opinion and issue this decision in its place.

Do No Harm alleges that a Pfizer fellowship program unlawfully excludes white and Asian-American applicants on the basis of race in violation of federal

CERTIFIED COPY ISSUED ON 01/10/2025

and state laws.  As a membership organization, it bases its standing on injuries to two pseudonymous white or Asian-American members who indicated they would apply for the fellowship if they were not excluded from eligibility.  The district court concluded that Do No Harm lacked standing to secure a preliminary injunction because it failed to identify a single injured member by name, and the unidentified members it claimed were injured had failed to demonstrate that they were ready and able to apply for the fellowship but for the alleged discriminatory eligibility requirements.  Concluding that its determination that Do No Harm lacked standing to secure a preliminary injunction required dismissal of Do No Harm's claims, the district court dismissed the case on its own initiative.

On appeal, Do No Harm challenges only the dismissal.  We conclude that the district court applied the wrong standard in assessing Do No Harm's standing for purposes of dismissal.  For purposes of establishing Article III standing to secure a preliminary injunction, the evidentiary burden is at least as onerous as the burden for establishing standing to secure a summary judgment.  *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011).  By contrast, at the dismissal stage a plaintiff can establish standing on the basis of allegations.  As a consequence, the district court's determination that Do No Harm failed to establish standing to secure a preliminary injunction was not conclusive of Do No Harm's standing to pursue a claim at the dismissal stage.  Because intervening questions of mootness have arisen, we remand for the district court to assess Do No Harm's Article III standing applying the standard applicable at the pleading stage, leaving to the district court's discretion which jurisdictional question to address first.  We accordingly **VACATE** and **REMAND**.

Judge Wesley dissents in a separate opinion.

———————

CAMERON T. NORRIS (Thomas R. McCarthy, Frank H. Chang, C'Zar Bernstein, *on the brief*), Consovoy McCarthy PLLC, Arlington, VA, *for Plaintiff-Appellant*.

SAMANTHA LEE CHAIFETZ, DLA Piper LLC, Washington, DC (Loretta E. Lynch, Liza M. Velazquez, Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY; Jeannie S. Rhee, Martha L. Goodman, Paul, Weiss, Rifkind,

Wharton & Garrison LLP, Washington, DC, *on the brief*), *for Defendant-Appellee.*

———————

PER CURIAM:[*]

Defendant-Appellee Pfizer Inc. ("Pfizer") sponsors a Breakthrough Fellowship Program (the "Fellowship") that seeks "to advance students and early career colleagues of Black/African American, Latino/Hispanic, and Native American descent." J. App'x 45. Do No Harm, a nationwide membership organization, filed suit against Pfizer on behalf of its members, alleging that Pfizer unlawfully excludes white and Asian-American applicants from the Fellowship in violation of federal and state laws.

When Do No Harm moved for a preliminary injunction, the district court concluded that Do No Harm lacked standing to secure a preliminary injunction, and on its own initiative dismissed the suit for lack of subject matter jurisdiction. *Do No Harm v. Pfizer Inc.*, 646 F. Supp. 3d 490, 517–18 (S.D.N.Y. 2022).[1]   In

———————

[*] Judges Jacobs and Robinson join in the per curiam opinion.  Judge Wesley dissents in a separate opinion.

[1] The district court did not enter judgment on a separate document as required by Federal Rule of Civil Procedure 58(a).  Nevertheless, pursuant to Rule 58(c)(2)(B), the judgment became final 150 days after the order was entered on the docket, and we deem Do No Harm's notice of appeal to have been timely filed as of that date. *See* Fed. R. App. P. 4(a)(2).  Moreover, we note that "failure to set forth a judgment or order on a separate document when required by Federal Rule of Civil Procedure 58(a) does not affect the validity of an appeal from that judgment or order."

particular, the district court concluded that Do No Harm lacked Article III standing because, 1) it failed to identify a single injured member by name, *id.* at 504–05, and 2) it failed to adequately show that at least one identifiable member is "able and ready" to apply, *id.* at 506. Concluding that its ruling regarding Do No Harm's standing to seek a preliminary injunction was conclusive of Do No Harm's Article III standing to pursue its claims at all, the district court dismissed Do No Harm's claims. *Id.* at 517–18.

We previously affirmed the district court's decision in a published opinion. *Do No Harm v. Pfizer, Inc.*, 96 F.4th 106 (2d Cir. 2024). On petition for rehearing, we vacate that opinion and issue this decision in its place.

On appeal, Do No Harm does not challenge the district court's denial of its motion for preliminary injunction. It challenges only the court's dismissal of its claims on standing grounds.

We conclude that the district court applied the wrong standard in dismissing Do No Harm's claims upon denying its motion for preliminary injunction. The evidentiary burden for establishing Article III standing for the

---

Fed. R. App. P. 4(a)(7)(B). We also note that "[w]here an order appealed from clearly represents a final decision and the appellees do not object to the taking of an appeal, the separate document rule is deemed to have been waived and the assumption of appellate jurisdiction is proper." *Selletti v. Carey*, 173 F.3d 104, 109–10 (2d Cir. 1999). Pfizer has not objected to the taking of this appeal; it has waived the separate document requirement. We therefore exercise jurisdiction pursuant to 28 U.S.C. § 1291.

purposes of a motion for a preliminary injunction is at least as onerous as the burden for establishing standing to secure a summary judgment. *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011). The burden for establishing standing at the dismissal stage is lower. *Lujan v. National Wildlife Federation*, 504 U.S. 555, 561 (1992) (to establish standing at the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice").

Because the district court's conclusion that Do No Harm lacked standing turned on the quality and quantity of its evidence to support standing rather than a legal deficiency in Do No Harm's theory of standing, the district court erred in concluding that its determination that Do No Harm had failed to establish standing to secure a preliminary injunction required that Do No Harm's claims be dismissed. The district court's alternative ruling dismissing individual claims on the merits was premature. We accordingly **VACATE** and **REMAND** for further proceedings consistent with this opinion.

## BACKGROUND

I.      **Facts**[2]

Pfizer is a corporation headquartered in New York City that researches, manufactures, and sells biopharmaceutical products.  In 2021, Pfizer launched the Breakthrough Fellowship Program: a nine-year, "first-of-its-kind" opportunity designed "to increase minority representation at Pfizer" and "enhance [its] pipeline of diverse leaders."  J. App'x 45.

The Fellowship consists of five parts: a ten-week summer internship for rising college seniors; two years of full-time employment after graduation; a fully paid scholarship to a full-time, two-year MBA, MPH, or MS Statistics program; summer internships between the first and second years of the fellow's master's program; and, finally, a return to Pfizer for postgraduate employment.

Individuals are eligible to apply for the Fellowship only during their junior year of college.  At the time this suit was filed in September 2022, the Fellowship webpage listed the following "Requirements" for potential applicants:

- Be a U.S. citizen or a U.S. Permanent Resident

---

[2] Our account of the facts is drawn from Do No Harm's Complaint and accompanying attachments.  For the purpose of reviewing the district court's order dismissing Do No Harm's claims, we credit Do No Harm's allegations.  *Novak v. Kasaks*, 216 F.3d 300, 305 (2d Cir. 2000).

- Be an undergraduate student enrolled in a full-time university program (an accredited college / university degree program at the time of award) and graduate December 2023 or Spring 2024

- Committed interest & intent to pursue an MBA, MPH or MS Statistics program

- Apply to a Breakthrough Fellowship Intern opportunity via Pfizer.com/Careers search 'Breakthrough' [hyperlink omitted]

- Have a 3.0 GPA or above

- Meet the program's goals of increasing the pipeline for Black/African American, Latino/Hispanic and Native Americans.

- Demonstrate exceptional leadership potential

- Willingness to work in NYC or other Pfizer location as indicated by the job posting

*Id.* at 48–49.

The webpage also contained an "FAQs" section that directed potential applicants to a separate PDF document. One frequently asked question read: "I'm not from a minority group identified for the Breakthrough Fellowship Program; what opportunities are available to me?" *Id.* at 51. Pfizer answered:

> Pfizer is an equal opportunity employer. We have multiple programs and opportunities throughout the year for undergraduate and graduate students and for Pfizer colleagues generally. For example, any colleague can pursue an MBA or MPH through Pfizer Benefits' Education Assistance Program. We also host MBA students each summer, more information on this program can be found here [hyperlink omitted]. Undergraduates and graduate students who are not eligible or interested in the Breakthrough Fellows Program but would like to pursue a career at Pfizer can apply to the Summer Growth Experience Program and/or create a job alert on our Pfizer.com/Careers page to receive email or text notifications when positions are opened.

*Id.* at 51.   The webpage further stated that "[a]pplications for the 2023 Breakthrough Fellowship Program will open shortly end of Summer 2022/beginning Fall 2022." *Id.* at 48.

Do No Harm is a Virginia-based, nationwide membership organization whose stated mission is "to protect healthcare from radical, divisive, and discriminatory ideologies, including the recent rise in explicit racial discrimination in graduate and postgraduate medical programs." *Id.* at 9.  Its members include "physicians, healthcare professionals, medical students, patients, and policymakers." *Id.*  Do No Harm pursues its mission through education and advocacy, including litigation.

## II.   District Court Proceedings

On September 15, 2022, Do No Harm filed suit against Pfizer, alleging violations of 42 U.S.C. § 1981, Title VI of the Civil Rights Act, Section 1557 of the Affordable Care Act (the "ACA"), and the New York State and New York City Human Rights Laws.  Do No Harm asserts that Pfizer's Fellowship unlawfully "excludes white and Asian-American" applicants, as evidenced by the Fellowship's FAQs page, advertising materials, and requirement that applicants "meet the program's goals of increasing the pipeline for Black/African American,

Latino/Hispanic and Native Americans."  J. App'x 8, 11–14 (cleaned up)[3].  Do No

Harm alleged it had "at least two members" who were "ready and able to apply

for the 2023 class" if Pfizer eliminated its allegedly discriminatory criteria.  *Id.* at

9.

Concurrent with its complaint, Do No Harm filed a motion for a temporary

restraining order and preliminary injunction barring Pfizer from selecting the 2023

Fellowship class until further order of the district court.  In support of its motion,

Do No Harm submitted anonymous declarations from two of its members

identified by the pseudonyms "Member A" and "Member B."[4]  In their respective

declarations, Members A and B affirmed that they "[met] all the eligibility

requirements set by Pfizer," including that they were undergraduate juniors,

---

[3] The parenthetical "cleaned up" signifies that internal quotation marks, brackets, footnotes, and citations from the original source have been omitted, and alterations accepted.

[4] In the context of cases in which parties who are identified by name *to the court* seek to keep their names confidential from the public or other parties, this Court routinely uses the terms "anonymous" and "pseudonymous" interchangeably.  *See, e.g.*, *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008) ("[W]hen determining whether a plaintiff may be allowed to maintain an action under a pseudonym, the plaintiff's interest in anonymity must be balanced against both the public interest in disclosure and any prejudice to the defendant."); *United States v. Pilcher*, 950 F.3d 39, 41–42 (2d Cir. 2020) (referring to defendant's motion as both a "motion to proceed anonymously" and a "motion to file a habeas petition under a pseudonym"); *Doe v. Delta Airlines Inc.*, 672 Fed. App'x 48, 52 (2d Cir. 2016) (referring to plaintiff's motion as both "an application to litigate under a pseudonym" and an "application to proceed to trial anonymously").  We use the two terms interchangeably here and emphasize that in contrast to the above cases, the names of the anonymous members have not been disclosed to the court, even *in camera*.

maintained GPAs of 3.0 or higher, and were "involved in campus life and [held] leadership positions" in various campus activities. *Id.* at 36–41. Members A and B, who self-identified as white and Asian-American, respectively, averred that Pfizer "categorically exclud[ed]" white and Asian-Americans like them from the Fellowship. *Id.* at 37, 40. Both Members swore they were "able and ready to apply to the 2023 class of the Fellowship" if Pfizer eliminated its allegedly discriminatory criteria. *Id.*

Do No Harm also submitted a declaration from Kristina Rasmussen, Do No Harm's Executive Director. Rasmussen asserted that "Do No Harm has at least two members who are white and Asian American and in their junior year of college who are ready and able to apply to the Pfizer Breakthrough Fellowship Program if Pfizer stops discriminating against white and Asian-American applicants." *Id.* at 34. She further declared that "Do No Harm also has at least one member who is a sophomore who will be ready and able to apply to the Pfizer Breakthrough Fellowship next year if Pfizer stops discriminating against white and Asian-American applicants." *Id.* at 34–35.

During a conference held on September 21, 2022, Do No Harm withdrew its request for a temporary restraining order based on Pfizer's representation that the application window for the 2023 class would not open before January 2023. At the

same conference, the district court observed that Do No Harm had not identified Members A or B by name, and asked that it address this issue in its further submissions.  Briefing on the preliminary injunction motion was completed in November 2022.  Both parties addressed the naming issue in their filings.

On December 16, 2022, the district court issued an opinion and order denying Do No Harm's motion for a preliminary injunction and dismissing the case without prejudice for lack of subject matter jurisdiction.  *Do No Harm*, 646 F. Supp. 3d at 518.

As a preliminary matter, the court noted that a plaintiff's burden to show Article III standing on a motion for a preliminary injunction "will normally be no less than that required on a motion for summary judgment."  *Id.* at 500 (quoting *Cacchillo*, 638 F.3d at 404).  Applying that standard, the court held that Do No Harm lacked standing because it failed to identify any of its injured members by name. *Id.* at 504–05 (citing *Summers v. Earth Island Institute*, 555 U.S. 488, 498–99 (2009)). Even if it had identified its members by name, the court concluded that Do No Harm failed to establish that any of its members suffered a cognizable injury because they did not "provide any information, facts or prior experience that show a committed interest and intent to pursue [the opportunity]."  *Id.* at 507 (cleaned up).  Consistent with its statement that if a plaintiff fails to establish standing to

11

secure a preliminary injunction the court should dismiss the case on standing grounds, *id.* at 500, the court dismissed Do No Harm's claims.

In an alternative analysis, the court considered Do No Harm's "claim-specific" standing to pursue its federal claims.[5]   *Id.* at 508.   The court concluded that Do No Harm could not pursue its § 1981 claim for the additional reason that associations such as Do No Harm lack standing to assert claims on behalf of their members under § 1981.  *Id.* at 508–09.  The court further concluded that Pfizer is not subject to the prohibitions of Title VI or Section 1557 of the ACA.  *Id.* at 509–17.  Having, in the alternative, rejected Do No Harm's federal claims for claim-specific reasons, the court declined to exercise supplemental jurisdiction over the remaining state law claims and dismissed the case without prejudice.  *Id.* at 518.

### III.     Motion to Supplement the Record on Appeal

Do No Harm filed a timely notice of appeal on January 3, 2023.  Pfizer represents that it opened its application window for the 2023 Fellowship class on February 15, 2023, and closed it on March 1, 2023.

---

[5] The district court's discussion of "claim-specific" standing appears to focus on Article III standing with respect to the § 1981 claim, and "statutory standing" with respect to the Title VI and ACA claims.  "Statutory standing," as distinct from Article III standing, relates to the merits, that is whether a particular plaintiff "has a cause of action under the statute."  *American Psychiatric Association v. Anthem Health*, 821 F.3d 352, 359 (2d Cir. 2016) (quoting *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014)).  Because so-called statutory standing does not implicate "the court's statutory or constitutional *power* to adjudicate the case," this term is "misleading."  *Id.* (quoting *Lexmark*, 573 U.S. at 128 n.4).

When it filed its brief and joint appendix, Do No Harm moved to supplement the record on appeal with another declaration of Do No Harm Executive Director Kristina Rasmussen and a declaration of a third anonymous member identified by the pseudonym "Member C." Member C, then a college sophomore, states, "I meet all the eligibility requirements [for the Fellowship] set by Pfizer, except I am Asian," and declares, "I am able and ready to apply for the 2024 class of the Fellowship if Pfizer" eliminates its allegedly discriminatory criteria. App. Ct. Dkt. 38 at 11. Rasmussen swears, among other things, that Member C is a member of Do No Harm. *Id.* at 13. Pfizer opposes the motion. App. Ct. Dkt. 50. The motion was referred to this panel for consideration alongside the merits.

In the meantime, Pfizer has represented that by the time it opened the application process for the 2023 cycle of the Fellowship, it had changed its selection criteria. App. Ct. Dkt. Nos. 114, 118. In particular, Pfizer edited its FAQs section to state, in pertinent part:

> You are eligible to apply for the Breakthrough Fellowship Program regardless of whether you are of Black/African American, Latino/Hispanic, or Native American descent. All applicants are asked to demonstrate their significant commitment and ability to further the Breakthrough Fellowship Program's goals by submitting a brief written statement.

Pfizer, *Breakthrough Fellowship Program FAQs*, https://cdn.pfizer.com/pfizercom/Program_FAQs_08302023.pdf [https://perma.cc/673S-GA3W] (last visited Jan. 9, 2025).

## DISCUSSION

An association may have standing to sue as the representative of its members, "[e]ven in the absence of injury to itself." *Warth v. Seldin*, 422 U.S. 490, 511 (1975). To establish associational standing, an association must show: (1) "its members would otherwise have standing to sue in their own right"; (2) "the interests it seeks to protect are germane to the organization's purpose"; and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977).

At issue here is the first of these requirements—that at least one association member must have standing to sue in their own right. To establish individual standing, a plaintiff must show: (1) they suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, as opposed to conjectural or hypothetical; (2) there is a "causal connection between the injury and the conduct complained of"; and (3) it is "likely, as opposed to merely

14

speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61 (cleaned up).

Ordinarily, to establish standing to challenge an allegedly discriminatory program, a plaintiff must apply to that program. *Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1096 (2d Cir. 1997). But a plaintiff need not go through the motions of formally applying when that would be a "futile gesture." *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 365–66 (1977) ("If an employer should announce [its] policy of discrimination by a sign reading 'Whites Only' on the hiring-office door, [its] victims would not be limited to the few who ignored the sign and subjected themselves to personal rebuffs."). In such circumstances, a plaintiff need only demonstrate that they are able and ready to apply, but a discriminatory policy prevents them from doing so on equal footing. *Gratz v. Bollinger*, 539 U.S. 244, 262 (2003).

On appeal, Do No Harm does not directly challenge the district court's denial of its motion for preliminary injunction. Instead, it argues that, after the district court concluded that Do No Harm lacked standing for purposes of its preliminary injunction motion, the district court should not have dismissed the claims altogether unless Do No Harm failed to establish standing under the less onerous standard applicable at the pleading stage. Applying that standard, Do

No Harm contends that it sufficiently alleged facts to establish its standing. In particular, it argues that, at the pleading stage, it is not required to name its members to establish Article III standing, and it sufficiently alleged that its pseudonymous members were ready and able to apply to the Fellowship. Even applying the more rigorous standard applicable at the preliminary injunction stage, Do No Harm argues it presented sufficient evidence to establish its members' standing.

Finally, Do No Harm asserts the district court erred by dismissing its federal claims pursuant to its "claim-specific" analyses without first giving Do No Harm notice or an opportunity to be heard. It disputes the district court's conclusion that associations like Do No Harm lack standing to sue on behalf of their members under § 1981, and it challenges the court's assessment of the merits of its Title VI and ACA claims.

Because Do No Harm does not challenge the district court's conclusion that it failed to establish its standing to secure a preliminary injunction, we need not address the merits of the court's analysis on that point. We focus, then, on the district court's order dismissing Do No Harm's claims.

"We review the dismissal of claims for lack of standing de novo," meaning without deference to the district court. *Ross v. Bank of America, N.A. (USA)*, 524

F.3d 217, 222 (2d Cir. 2008).  Applying that standard, we conclude that the district court erred in concluding that Do No Harm's failure to establish standing to secure a preliminary injunction required all out dismissal of Do No Harm's claims.  The evidentiary burden to establish standing to seek a preliminary injunction is more onerous than the burden at the pleading stage.  Accordingly, when a plaintiff fails to establish standing to secure a preliminary injunction, the plaintiff may maintain the action if the allegations in the complaint are sufficient to support standing under the standard applicable at the pleadings stage.  We remand for the district court to conduct that assessment in the first instance.

## I.     The District Court's Dismissal

In evaluating the district court's dismissal of Do No Harm's claims on the basis of standing, we consider the varying evidentiary burdens for establishing standing at different stages of litigation, the implications of a failure to establish standing to secure a preliminary injunction for a plaintiff's standing to otherwise pursue the claims, and the district court's analysis here.

### A. Preliminary Injunctions, Dismissals, and Standing

It is well settled that "[a] plaintiff's burden to demonstrate standing increases over the course of litigation." *Cacchillo*, 638 F.3d at 404.  As with any other matter on which the plaintiff bears the burden of proof, each element of

standing must be supported "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.

To establish standing at the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice," because at the pleading stage we "presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.* (cleaned up). "In response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." *Id.* (cleaned up).

In *Cacchillo*, we held that "[w]hen a preliminary injunction is sought, a plaintiff's burden to demonstrate standing will normally be no less than that required on a motion for summary judgment." 638 F.3d at 404 (cleaned up). Consequently, to establish standing for a preliminary injunction, "a plaintiff cannot rest on such mere allegations as would be appropriate at the pleading stage but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." *Id.* (cleaned up).

Thus, in assessing Do No Harm's standing to seek a preliminary injunction, the district court properly held Do No Harm to an evidentiary burden for

establishing standing at least as rigorous as the standard that applies at the summary judgment stage. *Do No Harm*, 646 F.Supp.3d at 499–500. The merits of the district court's application of this burden to Do No Harm's request for a preliminary injunction are not before us. We assume without deciding that Do No Harm failed to establish standing on the preliminary injunction motion.

## B. *Impact of a Lack of Standing for Preliminary Injunction*

The critical question here is whether Do No Harm's failure to establish standing to secure a preliminary injunction doomed its claims altogether. That is, if a plaintiff seeks a preliminary injunction but fails to establish standing, is a court obligated to dismiss the case altogether? On this point, the district court said yes. *Id.* at 500 ("If a plaintiff fails to establish standing, the court need not address the factors to be considered in deciding whether to award a preliminary injunction and should instead deny the motion and dismiss the case for lack of subject matter jurisdiction." (cleaned up)).

Do No Harm argues that even if it failed to establish standing in connection with its motion for a preliminary injunction, the district court should have simply denied the preliminary injunction motion rather than dismiss its claims altogether. It argues that it successfully alleged standing under a motion-to-dismiss standard, and that's the standard that applies to the question of dismissal.

A splintered D.C. Circuit decision from 2015, *Obama v. Klayman*, illustrates the divergent approaches to this question.  800 F.3d 559 (D.C. Cir. 2015).  All three panelists in *Klayman* agreed that the district court erred in granting plaintiffs a preliminary injunction because they concluded the plaintiffs lacked standing, but they disagreed as to whether the case should be dismissed.  Judge Williams reasoned that a party seeking a preliminary injunction must show "a likelihood of success on the merits," which includes a likelihood of success in establishing jurisdiction.  *Id.* at 565 (opinion of Williams, J.).  In his view, a determination that the plaintiff cannot show a likelihood of establishing standing defeats its request for a preliminary injunction but does not require dismissal of the case.  *Id.* at 568.  Rather, on remand, the plaintiff might be able to collect sufficient evidence to establish standing.  *Id.*  Judge Brown likewise would have remanded for the possibility of "limited discovery to explore jurisdictional facts."  *Id.* at 564 (opinion of Brown, J.).

The third panelist, Judge Sentelle, took a different view.  He explained:

> I agree with the conclusion of my colleagues that plaintiffs have not shown themselves entitled to the preliminary injunction granted by the district court. However, we should not make that our judicial pronouncement, since we do not have jurisdiction to make *any determination* in the cause.  I therefore would vacate the preliminary injunction as having been granted without jurisdiction by the district court, and I would

remand the case, not for further proceedings, but for dismissal.

*Id.* at 570 (opinion of Sentelle, J.) (emphasis added).  Judge Sentelle emphasized: "Without standing there is no jurisdiction.  Without jurisdiction, we cannot act." *Id.*

The D.C. Circuit subsequently endorsed the majority view from *Klayman*, holding that "an inability to establish a substantial likelihood of standing requires denial of the motion for preliminary injunction, not dismissal of the case." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015).

Although the D.C. Circuit applies a different standard from this Circuit in assessing standing at the preliminary injunction stage—it evaluates whether the plaintiff has shown a "substantial likelihood" of establishing standing, *id.*—the divergent approaches modeled in *Klayman* are instructive and highlight that the answer to our central question is nuanced.

In some cases, a plaintiff's failure to establish standing to secure a preliminary injunction has nothing to do with the measure of evidence the plaintiff has produced.  The plaintiff's legal theory itself, rather than the insufficiency of the plaintiff's evidence, may doom the plaintiff's standing.  If that becomes apparent to the district court upon review of the plaintiff's motion for preliminary injunction, the court *cannot* consider the merits of the preliminary injunction

21

motion and should dismiss the claim altogether. *See Munaf v. Geren*, 553 U.S. 674, 691 (2008) ("Review of a preliminary injunction is not confined to the act of granting the injunction, but extends as well to determining whether there is any insuperable objection, in point of jurisdiction or merits, to the maintenance of the bill, and if so, to directing a final decree dismissing it." (cleaned up)); *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101 (1998) (holding that Article III standing is "always an antecedent question," such that a court cannot "resolve contested questions of law when its jurisdiction is in doubt"); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (Once a federal court determines it lacks subject matter jurisdiction, "the court must dismiss the complaint in its entirety.").

Thus, in cases in which a plaintiff cannot establish standing no matter how much evidence the plaintiff musters, Judge Sentelle's approach makes sense. *See, e.g.*, *Cave v. East Meadow Union Free School Dist.*, 514 F.3d 240, 251 (2d Cir. 2008) (where district court lacked subject matter jurisdiction due to plaintiffs' failure to exhaust administrative remedies, motion for preliminary injunction should "have been dismissed for lack of jurisdiction, rather than on the ground that appellants are unlikely to succeed on the merits of their action"); *cf. Rojas v. Cigna Health and Life Ins. Co.*, 793 F.3d 253, 259 (2d Cir. 2015) (affirming dismissal of doctor's ERISA claim in context of his request for a preliminary injunction where provider was not

a "beneficiary" of the ERISA plan and thus lacked "statutory standing" to bring an ERISA retaliation claim).

On the other hand, if the failure to establish standing arises from the insufficiency of the plaintiff's *evidence* of standing, and that insufficiency may be remediable, dismissal of a plaintiff's claims because the plaintiff has failed to muster sufficient evidence to establish standing for a preliminary injunction would be premature. A determination that the plaintiff *hasn't* presented enough evidence to establish standing in the preliminary injunction context doesn't mean the plaintiff won't be able to do so at a later stage in the proceeding.

The most obvious circumstance in which this may arise is when the plaintiff may require jurisdictional discovery to get the evidence needed to support the plaintiff's standing. *See, e.g.*, *Klayman*, 800 F.3d at 564 (opinion of Brown, *J.*) (noting that, on remand, the district court could determine whether to allow limited discovery to explore jurisdictional facts); *id.* at 568 (opinion of Williams, *J.*) (same). "[P]recisely because the plaintiff bears the burden of alleging facts demonstrating standing, we have encouraged district courts to 'give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction' where necessary." *Katz v. Donna Karan Company, L.L.C.*, 872 F.3d 114, 121 (2d Cir. 2017) (quoting *Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140,

149 (2d Cir. 2011)).  Dismissing claims before a plaintiff has had a chance to conduct necessary discovery would violate this admonition.

But even in cases where the plaintiff's failure to muster sufficient evidence to establish standing to secure a preliminary injunction arises from the plaintiff's failure to proffer sufficient evidence to establish standing, the consequence of that failure is that *the plaintiff isn't entitled to a preliminary injunction*.  We see nothing in the law or rules of procedure that requires plaintiffs who opt to seek a preliminary injunction on incomplete evidence to risk outright dismissal, even if their *allegations* are otherwise sufficient to establish standing at the pleading stage.[6]

### C.  District Court's Analysis

As noted above, in assessing Do No Harm's standing to seek a preliminary injunction, the district court properly held Do No Harm to an evidentiary burden for establishing standing at least as rigorous as the standard that applies at the

---

[6] We note that our conclusion on this point does not rest on the United States Supreme Court's recent decision in *Murthy v. Missouri*, 603 U.S. 43 (2024), a ruling Do No Harm views as determinative.  In *Murthy*, the Supreme Court considered whether the individual and state plaintiffs had Article III standing to secure a preliminary injunction enjoining federal government officials from urging social media platforms to remove or suppress content.  In framing its analysis, the Court stated, "At the preliminary injunction stage . . . the plaintiff must make a 'clear showing' that she is 'likely' to establish each element of standing.  Where, as here, the parties have taken discovery, the plaintiff cannot rest on 'mere allegations,' but must instead point to factual evidence."  *Id.* at 58 (cleaned up).  Nothing in the *Murthy* Court's discussion addresses the critical issue in this case: if the plaintiff fails to present sufficient evidence to satisfy the standard, should the court dismiss the case or simply allow it to go forward?  For that reason, *Murthy* is not determinative of the issue before us.

summary judgment stage. *Do No Harm*, 646 F.Supp.3d at 499–500. The court's underlying analysis focused on the quantity and quality of Do No Harm's evidence, rather than a fundamental flaw in Do No Harm's claim to standing. *See, e.g., id.* at 504 ("Because Plaintiff does not identify by name any member with standing or advance a theory that all of its members have standing, Plaintiff lacks Article III standing."); *id.* at 505–06 ("Even if Plaintiff had identified Members A and B by name, the pleadings and evidence provided by Plaintiff do not establish that its members have suffered injury in fact . . . Plaintiff has not adequately shown that at least one identifiable member is 'able and ready' to apply.").

Even if these evidentiary shortcomings would impair Do No Harm's ability to secure a favorable judgment on the merits—a question we need not decide here—they do not present an insurmountable obstacle to Do No Harm's standing. Do No Harm could identify its allegedly injured member or members by name, and those members could provide more detailed information to establish in a more particularized way that they are ready and able to apply for and accept the Fellowship if offered.

Accordingly, the district court erred to the extent it concluded that its resolution of the standing question with respect to the preliminary injunction

motion was, in this case, conclusive as to Do No Harm's Article III standing to maintain this action.[7]

## II.    Remand

That leaves the question whether Do No Harm has sufficiently *pled* standing to survive a motion to dismiss.  Although the district court did not decide this issue, it is within our discretion to consider it.  *See, e.g.*, *Liberty Mutual Insurance Company v. Hurlbut*, 585 F.3d 639, 648 (2d Cir. 2009) (exercising "our discretion to affirm the district court's judgment on any ground appearing in the record, even if the ground is different from the one relied on by the district court." (cleaned up)).  But we also "have discretion to choose not to do so based on prudential factors and concerns."  *Saeli v. Chautauqua County, NY*, 36 F.4th 445, 461 (2d Cir. 2022) (cleaned up).

---

[7] The district court did suggest that, with respect to the "naming names" issue, it would have concluded that Do No Harm lacked standing even under the standards applicable at the pleadings stage. *Do No Harm v. Pfizer Inc.*, 646 F.Supp.3d 490, 504 (S.D.N.Y. 2022).  We do not treat this passing statement as an alternate holding.  The district court's analysis was otherwise anchored in the *Cacchillo* standard applicable to a request for preliminary injunction. *Id.* at 499–500.  The primary Supreme Court decision the district court relied on in its analysis arose in the context of review of a final adjudication on the merits. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009).  And the district court did not address this Court's decision in *Building and Construction Trades Council of Buffalo, New York and Vicinity v. Downtown Development, Inc.*, 448 F.3d 138 (2d Cir. 2006), in which we concluded that an organizational plaintiff need not identify specific injured members by name at the pleading stage, while recognizing that a naming requirement "might have some validity . . . at the summary judgment stage." *Id.* at 144–45.

We choose to remand.  If on remand Pfizer moves to dismiss Do No Harm's claims on the ground of standing, we leave it to the district court to address in the first instance the question whether Do No Harm's pleadings are adequate.  We further deny as moot Do No Harm's request to supplement the record.  The district court can address such a motion in the first instance, and may address any other jurisdictional issues that arise.  *See Sinochem International Co. Ltd., v. Malaysia International Shipping Corp.*, 549 U.S. 422, 431 (2013) ("[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits.") (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999) and *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 100–01, n.3 (1998)).[8]

## CONCLUSION

For the above reasons, we **GRANT** Do No Harm's Petition for Rehearing, **VACATE** our prior judgment in this appeal, **VACATE** the district court's dismissal of Do No Harm's claims, **DENY** Do No Harm's motion to supplement

---

[8] We note that the district court's consideration, on its own initiative, of alternative grounds for dismissal were premature.  At least with respect to the Title VI and ACA claims, the district court's analysis turned on the merits, rather than Article III standing.  *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101–02 (1998) (explaining that a court has no authority to pronounce upon the meaning or constitutionality of a state or federal law when it has no jurisdiction).

the record on appeal as moot, and **REMAND** to the district court for further

proceedings consistent with this opinion.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

28